**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **FREDERICK J. GREDE, as Chapter 11 Trustee for Sentinel Management Group, Inc.,** | |
| **Plaintiff,** | **CASE NO. 08 CV 2205** |
| **v.** | **Hon. James B. Zagel** |
| **MCGLADREY & PULLEN LLP and G. VICTOR JOHNSON,** | |
| **Defendants.** | |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO WITHDRAW THE REFERENCE**

Richard J. Mason (ARDC #1787659)
Patricia K. Smoots (ARDC #6194076)
Michael M. Schmahl (ARDC #06275860)
MCGUIREWOODS LLP
77 W. Wacker Drive, Suite 4400
Chicago, Illinois  60601
Phone:  (312) 849-8100
Facsimile:  (312) 849-3690

Steven M. Farina
Thomas H. L. Selby
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C.  20005
Phone:  (202) 434-5526
Facsimile:  (202) 434-5029

*Of Counsel*

*Attorneys for Defendants McGladrey & Pullen, LLP and G. Victor Johnson*

## INTRODUCTION

Although Plaintiff couches its brief as an "opposition," it concedes from the outset that the reference of this case to the bankruptcy court must be withdrawn. The Trustee agrees that the bankruptcy court lacks jurisdiction to conduct the trial of this matter and does not dispute that numerous cases withdraw the reference based on that fact. See Opp. at 5, 7 n.2 (admitting as "unremarkable" the "proposition that a bankruptcy court may not conduct a jury trial"). The sole remaining question for the Court, then, is when the reference should be withdrawn. Opp. at 2 ("Thus, withdrawal of the reference is inappropriate at this time.") (emphasis added).

At its core—and on this point the parties appear to be in heated agreement—this question turns on efficiency. Remarkably, despite the numerous cases already pending in this District, and its own arguments that common factual and legal issues bind those cases together, Plaintiff takes the position that this (concededly) non-core litigation should be carved out for the bankruptcy court to handle. This, despite the (again conceded) fact that the bankruptcy court does not have authority to enter findings of fact or conclusions of law on the dispositive motions currently pending. Plaintiff's self-contradictory position would create two tiers of litigation in this matter—one in the bankruptcy court, and another in this Court. It would drive up the cost of the litigation to the parties and the bankruptcy estate. And it would refer to the bankruptcy court questions of non-Title 11 federal law reserved to the district courts. This effort to rewrite the law governing withdrawal of the reference should be rejected, and the motion to withdraw the reference granted.

## ARGUMENT

## I.    IMMEDIATE WITHDRAWAL OF THE REFERENCE IS APPROPRIATE.

The points of agreement here are significant: the parties agree that the claims in this case are non-core, that the bankruptcy court does not have jurisdiction to conduct the requested jury

trial, and that the bankruptcy court cannot enter findings of fact or conclusions of law on dispositive motions. Given these circumstances, the efficiencies strongly support immediate withdrawal of the reference, as legions of cases have held. See, e.g., Coe-Truman Techs., Inc. v. U.S. Gov't (In re Coe-Truman Techs., Inc.), 214 B.R. 183, 187 (N.D. Ill. 1997); In re K & R Express Sys., Inc., 382 B.R. 443, 446 (N.D. Ill. 2007); Comdisco Ventures, Inc. v. Fed. Ins. Co. (In re Comdisco Ventures), Nos. 04 C 2007, -2393, 01-24795, ADV 04A00285, 2004 WL 1375353, at *2 (N.D. Ill. June 18, 2004).

In the face of compelling authority urging withdrawal of the reference, Plaintiff maintains that the Court should instead require the parties to first adjudicate the non-core claims before the bankruptcy court, and then re-litigate the same claims de novo before the District Court. This course is the height of inefficiency, would prejudice defendants, and would yield the very result Plaintiff claims it is trying to avoid—delay, increased expense, and multiple judges handling the same issues.

### A.    According to Plaintiff, Common Issues of Fact and Law Bind This Matter to Other District Court Matters.

In briefing filed in support of its motion to reassign this matter to Judge Kocoras, Plaintiff has already addressed the question of efficient handling of Sentinel-related matters. Plaintiff recognizes that there is "overlap of issues" between this motion and the reassignment motion. Opp. at 4. That overlap is significant: in support of its reassignment motion, Plaintiff stressed the common factual and legal issues relating to the collapse of Sentinel that are currently pending before the District Courts independent of the bankruptcy proceeding. See Ex. 1, Mem. in Supp. of Mot. for Reassignment ("Reply Mem."), No. 04-4684, D.I. 40; Ex. 2, Reply Mem. in Supp. of Mot. for Reassignment ("Reassignment Reply"), No. 07-4684, D.I. 55. According to Plaintiff the same operative facts and law stand at the core of each of the cases before the District Court.

See Ex. 2, Reassignment Reply at 3–4 (chart summarizing common issues of fact and law before the district courts).  Specifically with respect to this case, Plaintiff asserts that the issues of "the duties of Sentinel's auditors" with regard to Sentinel are "inexorably linked" to issues before the District Court (again, not subject to referral to the bankruptcy court).  Ex. 2, Reassignment Reply at 10.[1]  The Trustee goes so far as to claim that the District Court can decide "outcome determinative" issues common to both the SEC matter and this matter.  Id. at 8.

In light of its urging reassignment based on the related and overlapping issues before the District Court, Plaintiff's argument here that efficiency concerns compel the Court to refer the substantive elements of this non-core matter back to the bankruptcy court is self-contradictory. As explained below, Plaintiff's proposal would create two tiers of repetitive litigation as the bankruptcy court can neither try this case nor adjudicate dispositive motions, including the pending motion to dismiss, which would end up before this Court before any final order could be entered.

**B.    Considerations of Efficiency Favor Immediate Withdrawal of the Reference.**

Adding to its concession that the bankruptcy court cannot handle the jury trial here, Plaintiff does not dispute, nor could it, that the bankruptcy court may not enter findings of fact and conclusions of law as to the motion to dismiss and other potentially dispositive motions.  See Opp. at 13.  It is hornbook law that the bankruptcy court may not render final judgment in this non-core matter.  28 U.S.C. § 157(c)(1) (2000); Fed. R. Bankr. P. 9033(d).  Any findings by the bankruptcy court would inevitably require de novo review by this Court.  Id.; see also Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 584 (1985) ("Congress may not vest in a non-

---

[1]    See also Reassignment Reply at 10 ("Moreover, the financial statements at issue in the McGladrey action are directly at issue in the CFTC action.").

Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review."); N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 80–81 (1982) (affirming that Article III courts must retain "the essential attributes of judicial power") (internal quotation marks omitted).[2]

Defendants have filed a dispositive motion that will be the first substantive matter presented in this proceeding. See Defs' Mot. to Dismiss and Strike, attached hereto as Exhibit 3.[3] Following the *in pari delicto* rule of Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 454 (7th Cir. 1982) and Knauer v. Jonathon Roberts Financial Group, Inc., 348 F.3d 230 (7th Cir. 2003), defendants establish that the Trustee, standing in the shoes of Sentinel, cannot sue the auditors for failing to report Sentinel's own fraud.   If this Court were to deny the present motion to withdraw the reference and return this case to the bankruptcy court, it would in effect be requiring the parties to litigate the motion twice, once before the bankruptcy court, and then *de novo* before this Court. See 28 U.S.C. § 157(c)(1) (2000); Thomas v. Union Carbide, 473 U.S. at 584; N. Pipeline Constr. Co., 458 U.S. at 80–81.   This two-tiered approach would be a terrifically inefficient use of judicial resources.

It is therefore not surprising that district courts have repeatedly found that where bankruptcy court findings are subject to *de novo* review, "it is a more efficient use of judicial resources for [the district court] to decide [the] case in the first instance." Coe-Truman Techs.,

---

[2]    See, e.g., Quality Care Med. Equip. Co., Inc., v. Bowen (In re Quality Care Med. Equip. Co.), 92 B.R. 117, 123 (Bankr. E.D. Pa. 1988) (submitting to the district court proposed findings and conclusions granting a motion to dismiss for failure to state a claim); Fleet v. U.S. Consumer Council, Inc., (In re Fleet), 103 B.R. 578, 587 n.5 (E.D. Pa. 1989) (district court adopting bankruptcy court's recommendation on granting a motion for summary judgment).

[3]    Briefing on this Motion will be completed by July 16, 2008.

214 B.R. at 187; see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993) ("[T]he fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court."); Wellman Thermal Sys. Corp., v. Columbia Cas. Co., No. 1:05-cv-1191-JDF-TAB, 2005 WL 4880619, at *3 (S.D. Ind. Oct. 5, 2005) (finding that where a "bankruptcy judge's proposed findings and conclusions in [a] noncore proceeding would be subject to *de novo* review by the district court, possibly resulting in inefficient duplication by the two courts," considerations of judicial economy weigh in favor of immediate withdrawal of the reference); Official Comm. of Unsecured Creditors of the VWE Group, Inc. v. Amlicke (In re VWE Group, Inc.), 359 B.R. 441, 451 (S.D.N.Y. 2007) (same).[4]

Furthermore, Plaintiff's proposal to have two different courts address the dispositive issues in this case flies in the face of Plaintiff's acknowledged "obligation to . . . minimiz[e] its expenses" by pursuing "the most practical approach" to the litigation.  Opp. at 4.  Delay and expense to the parties is one factor courts consider, and given the *de novo* review that would be required here, this factor militates strongly in favor of granting the motion.  See, e.g., Comdisco Ventures, 2004 WL 1375353, at *4 ("[I]t is likely that it will cost all the parties less to litigate the claims in one forum rather than two."); K & R Express Sys., 382 B.R. at 486; Wellman, 2005

---

[4]     Indeed, efficient management of the matter would be fostered by withdrawal of the reference now, regardless of the limits on the bankruptcy court's jurisdiction.  The pretrial proceedings, in particular dispositive motions, often inform the Court's management of discovery and the refinement of issues for the jury trial.  As the Court noted in Wellman, even where "there may be genuine issues of fact necessitating trial[,] [c]ertain efficiencies would be lost were the bankruptcy court to proceed with pretrial matters; the district court would not gain a valuable familiarity with the case that could assist it leading up to and through trial."  2005 WL 4880619, at *3.

WL 4880619, at *1; <u>Coe-Truman Techs.</u>, 214 B.R. at 187; <u>In re Sevko, Inc.</u>, 143 B.R. 114, 117 (N.D. Ill. 1992).

### C.    That the Claims Are Non-Core Counsels Withdrawal of the Reference.

Tellingly, Plaintiff devotes only two paragraphs, on the penultimate page of its brief, to its attempt to refute significant authority that immediate withdrawal of the reference is warranted where claims and defenses are entirely non-core. Yet whether claims are core or non-core is "<u>the most important factor</u>" in considering whether and when to withdraw the reference.[5] <u>K & R Express Sys.</u>, 382 B.R. at 446 (emphasis added); <u>see also</u>, <u>Coe-Truman Techs.</u>, 214 B.R. at 187 ("The most important of these factors is whether the adversary proceeding sought to be withdrawn is core or non-core." (citing <u>Levy v. McIntyre (In re Leasing, Inc.)</u>, No. 97 C 3821, 1997 WL 414099 (N.D. Ill. July 17, 1997)); <u>Wellman</u>, 2005 WL 4880619, at *1. Just last year, Judge Moran explained why this is so: "[T]he most important factor is whether a proceeding is core or non-core, as efficiency, uniformity and judicial economy concerns are largely subsumed within it." <u>K & R Express Sys.</u>, 382 B.R. at 446.

In the present case, there is no dispute that all of the claims are non-core.[6] <u>See</u> Compl. ¶ 8. Moreover, in spite of Plaintiff's misleading suggestion to the contrary, <u>see</u> Opp. at 7, no "bankruptcy-related defenses" have been raised which would justify leaving this case before a bankruptcy judge. Although the application of standing and *in pari delicto*—issues addressed in

---

[5]    Plaintiff's only response is again to cite cases for the proposition that, under appropriate circumstances, district courts have discretion to postpone withdrawal. <u>See</u> Opp. at 13. Defendants acknowledge that discretion, but under the circumstances here, the weight of authorities support immediate withdrawal.

[6]    Plaintiff asserts two claims: 1) negligence and 2) aiding and abetting breach of fiduciary duty. <u>See</u> Compl. ¶¶ 174–84. In its Complaint, Plaintiff candidly admits that these claims are entirely "non-core." <u>See</u> Compl. ¶ 8.

Defendants' motion to dismiss—may have implications related to Title 11, they are not core issues that require the expertise of a bankruptcy court or for some other reason lay outside of the regular experience of a district court judge.  To the contrary, these are issues that district courts can—and regularly do—adjudicate.  See, e.g., Knauer, 348 F.3d at 233 (affirming district court's dismissal of bankruptcy trustee's claims based on standing and *in pari delicto*); Nisselson v. Lernout, 469 F.3d 143, 158 (1st Cir. 2006) (same), cert. denied, 127 S. Ct. 2131 (2007). Plaintiff's suggestion to the contrary is plainly wrong.

In this regard, Plaintiff's liberal reliance on this Court's Order in Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.), Nos. 94 C 5074, 93 B 310, -312, -313, -316, -318 & -319, 1994 WL 654662 (N.D. Ill. Nov. 10, 1994) is misplaced.  As Your Honor recognized, the dispute in Envirodyne was subject to three potentially dispositive defenses that sounded entirely in bankruptcy law.  Id. at *1.  The Envirodyne Order primarily reflects the Court's hesitance towards "relinquishing an opportunity to have [the] bankruptcy-based defenses considered by a court with general expertise in bankruptcy law." Id. at *2.  Indeed, the Order there noted that withdrawal of the reference would "be more appropriate" when, as is the case here, "the bankruptcy court [could not] adjudicate [the claim] without considering [non-Title 11 law]." Id. Plaintiff here admits that this condition adheres to this case:  as discussed above, in connection with its effort to reassign this matter to Judge Kocoras, Plaintiff stresses that common issues of fact and law are before the district courts for determination.  See Ex. 2, Reassignment Reply at 3–4 (chart summarizing common issues of fact and law before the district courts). Plaintiff is correct:  these issues are indisputably non-core, and the bankruptcy court could not possibly adjudicate the motion to dismiss or other potentially dispositive motions without

7

considering non-bankruptcy issues.[7]

### D.    Plaintiff's Exception Would Swallow the Rule.

Plaintiff's overreaching is most clearly demonstrated by its attempt to fashion a rule it claims is "well-settled in this District and elsewhere" that even where withdrawal is required because a jury trial is requested, such withdrawal "should not" occur until the case is trial-ready. Opp. at 1.[8]  This assertion badly misstates the holding and import of the cases cited in Plaintiff's Opposition.  Rather, these cases stand for the unremarkable proposition that a district court has the discretion to tailor the withdrawal order to the specific circumstances of the case.  As this Court said in Envirodyne:  "Rather than applying a rigid rule, discretionary withdrawal of the reference turns on case-specific considerations of judicial economy. . . ."  1994 WL 654662, at *2 (delaying withdrawal of the reference because the defenses implicated core bankruptcy issues); see also Keene  Corp. v. Williams Bailey & Wesner, LLP (In re Keene Corp.), 182 B.R. 379, 382 (S.D.N.Y. 1995) ("[M]andatory withdrawal is a fact specific determination, and thus necessarily involves analysis in light of the circumstances involved in each case.").  The weight of judicial authority in cases involving admittedly non-core claims is to withdraw the reference

---

[7]      In addition, because the claims in this case are exclusively "non-core," questions of uniformity, forum shopping, and efficiency in bankruptcy administration are not implicated in determining whether the reference should be withdrawn.  See Wellman, 2005 WL 4880619, at *3 ("Withdrawal of the reference here will neither negatively affect the uniformity and efficiency in bankruptcy administration nor promote forum shopping because the issues presented by the adversary proceeding are not unique to bankruptcy law."); Coe-Truman Techs., 214 B.R. at 187 ("[W]ithdrawing the reference in this case will not promote forum shopping or adversely affect the uniform administration of bankruptcy law because [the] adversary complaint raises issues governed primarily by non-title 11 law.").

[8]      Not one of the cases cited by Plaintiff in support of its supposed rule in favor of postponement holds that a court presumptively should not withdraw the reference until the case is trial-ready.  Instead, each weighs a myriad of case-specific factors (judicial economy, whether the claims are core or non-core, convenience to the parties, etc.) in determining whether and when to withdraw the reference.

immediately.  See, e.g., K & R Express Sys., 382 B.R. at 446 (N.D. Ill. 2007); Comdisco Ventures, 2004 WL 1375353 at *2;  Coe-Truman Techs., 214 B.R. at 187; Orion Pictures Corp., 4 F.3d at 1101; Wellman, 2005 WL 4880619, at *3; VWE Group, 359 B.R. at 451; Envirodyne, 1994 WL 654662, at *2 (holding that withdrawal of the reference is more appropriate where all legal issues are non-core).  Even where Courts are inclined to refer discovery matters to the bankruptcy court, the better practice is to reserve for the district court all dispositive motions. See, e.g., Mellon v. Del. & Hudson Ry. (In re Del. & Hudson Ry.), 122 B.R. 887, 897 (D. Del. 1991) (ordering withdrawal of the reference once the matter is "ready for trial or case dispositive motions arise" (emphasis added)); Wedtech Corp. v. Banco Popular de P. R. (In re Wedtech Corp.), 94 B.R. 293, 297 (S.D.N.Y. 1988) (same).

The "rule" advanced by Plaintiff would turn the law regarding withdrawal of the reference on its head.  Contrary to the many reported cases on withdrawal, under Plaintiff's rule, courts would not consider whether the claims are core or non-core, whether the bankruptcy court could efficiently handle significant and compelling dispositive motions, or whether the parties would face additional costs due to an unnecessary level of judicial review.  Plaintiff's rule would result in every case being referred to the bankruptcy case until it was "trial ready," a result plainly contrary to the dictates of 28 U.S.C. § 157 (if not Article III of the Constitution) and the many cases applying it.

## II.  IMMEDIATE WITHDRAWAL IS MANDATORY BECAUSE THE PLAINTIFF'S CLAIMS INVOLVE SUBSTANTIAL AND MATERIAL UNRESOLVED ISSUES OF NON-TITLE 11 FEDERAL LAW.

Given Plaintiff's concession that the case must be withdrawn for purposes of the jury trial, the inquiry as to mandatory withdrawal under § 157(d) is largely moot, and the five pages Plaintiff devotes to the issue are irrelevant.  Nonetheless, the vigor of Plaintiff's opposition on this point is curious:  Plaintiff has itself touted the centrality of questions relating to non-Title 11

federal law to the claims in question.  According to Plaintiff's reassignment papers, among the "common legal issues" before the district courts is "[w]hether commingling, pledging, and leveraging" the financial reporting related thereto violated the Investment Advisers Act of 1940 (Advisers Act), the Commodities Exchange Act (CEA), and CFTC and SEC Rules.  Ex. 2, Reassignment Reply at 3–4 (chart).  Here, Defendants dispute Plaintiff's allegation that under the provisions of the Advisers Act, the CEA, and CFTC and SEC regulations, the auditors had the expansive duties to report Sentinel's alleged misdeeds that the Plaintiff here urges.  See, e.g., Compl. ¶¶ 2, 43, 70, 82; see also Ex. 2, Reassignment Reply at 9.[9]  There is little authority concerning how these statutes and regulations apply to an auditor in cases involving a special-purpose futures commission merchant such as Sentinel.[10]  Accordingly, resolution as to the specific scope of Defendant's duties in this case—what exactly were their obligations, when did they materialize, and to whom were they owed—will plainly "require more than rote application" of non-Title 11 federal law.  See In re Lissner Corp., 115 B.R. 604, 612 (N.D. Ill. 1990).  Therefore, immediate withdrawal of the reference is appropriate.

---

[9]     Plaintiff's argument that the auditors did not at the time question the applicability of the CEA or the Adviser's Act to Sentinel or McGladrey, Opp. at 2-3, is specious.  The auditors were not engaged to question the applicability of the regulations, nor would they be qualified to do so.  This is an entirely different forum in which the Court must make its own determination as to the application of these statutes and regulations.

[10]    There is also a dispute raised by Bank of New York (BONY) as to the applicability of the Advisers Act and the CEA and their regulatory counterparts to Sentinel and BONY.  See BONY's Mem. in Supp. of Mot. to Withdraw the Reference, No. 08-2582.  In denying BONY's motion to dismiss, the bankruptcy court did not reach the specific application of these non-Title 11 issues of federal law.  See Hr'g. Tr. at 52–53, excerpts attached hereto as Exhibit 4.

## CONCLUSION

Because the applicable considerations strongly favor granting Defendant's Motion to Withdraw the Reference, Defendants respectfully request that this Court immediately withdraw the reference to the bankruptcy court.

Respectfully submitted,

Dated:  June 19, 2008                        MCGUIRE WOODS, LLP


By:     /s/ Michael M. Schmahl_____
        Richard J. Mason (ARDC #1787659)
        Patricia K. Smoots (ARDC #6194076)
        Michael M. Schmahl (ARDC #06275860)
        McGuireWoods LLP
        77 W. Wacker Drive, Suite 4400
        Chicago, Illinois  60601
        Phone:  (312) 849-8100

        and

        Steven M. Farina
        Thomas H. L. Selby
        WILLIAMS & CONNOLLY LLP
        725 12th Street, N.W.
        Washington, D.C.  20005
        Phone:  (202) 434-5526
        Facsimile:  (202) 434-5029

# EXHIBIT 1

.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) Case No. 07 C 4684 |
| Plaintiff, | ) ) |
| v. | ) Honorable Charles P. Kocoras ) |
| **SENTINEL MANAGEMENT GROUP, INC.** | ) ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR REASSIGNMENT OF RELATED CASE**

Pursuant to Local Rule 40.4, Frederick J. Grede, not individually but as chapter 11 trustee of Defendant Sentinel Management Group, Inc. (the "Trustee"), respectfully requests reassignment of Case No. 08-CV-2205 (*Grede v. McGladrey & Pullen LLP et al.*) to this Court. The cases are related because they involve some of the same issues of fact or law and grow out of the same transactions or occurrences. Moreover, reassignment of Case No. 08 C 2205 would result in a substantial saving of judicial time and effort; would promote the efficient resolution of the common issues of fact and law, which are dispositive of the claims currently pending before this Court; and would prevent the needless duplication of having those issues subject to separate proceedings before two different judges of the same Court.

**BACKGROUND**

On August 17, 2007, Defendant Sentinel Management Group, Inc. ("Sentinel") filed a petition for chapter 11 bankruptcy. That bankruptcy proceeding, styled *In re Sentinel Management Group, Inc.*, Bankruptcy Case No. 07-14987, is pending in the United States

Bankruptcy Court for the Northern District of Illinois.  By orders dated August 23 and 29, 2007, the Trustee was duly appointed chapter 11 trustee for Sentinel.

Sentinel was registered with the United States Securities and Exchange Commission ("SEC") as an investment adviser and with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant.  As such, it was subject to regulations requiring strict segregation of assets held on behalf of customers and prohibiting the pledging of those assets for bank loans to Sentinel.  *See, e.g.,* 15 U.S.C. § 80b-6; 17 C.F.R. § 275-206(4)-2; 7 U.S.C. § 6d; 17 C.F.R. § 1.20.

**The Present Action**

On August 20, 2007, the SEC filed its Complaint in this action, alleging that Sentinel violated the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq.* (the "Investment Advisers Act"), and the SEC rules promulgated thereunder.  (*See* Exhibit A, SEC Complaint, §§ 26-31.)  In particular, the SEC alleged violations of Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act and violations of SEC Rule 206(4)-2 as a result of the "commingling and transferring [of] client funds and securities between the various client segregated accounts and between client accounts and a 'house' account," the pledging of those assets "as collateral in order to obtain a line of credit from the Bank of New York," and "practices and courses of business which operate[d] as a fraud or deceit upon [Sentinel's] clients and prospective clients." (*Id.*, ¶¶ 16, 24, 27-31.)

Counsel for the Trustee have filed appearances in this case and appeared at several status conferences.  The Trustee also has cooperated with the SEC in this matter.  On September 24, 2007, this Court entered an Agreed Order of Preliminary Injunction and Other Relief providing that the SEC "has made a sufficient and proper showing" for entry of a preliminary injunction

that "Sentinel through certain members of its then management and other agents engaged in acts, practices and courses of business which constitute violations of Sections 206(1), 206(2) or 206(4) of the Investment Advisers Act . . . and Rule 206(4)-2 thereunder." (Agreed Order, ¶ 2.) The Trustee "consented to the entry of [the] Order of Preliminary Injunction and Other Relief without admitting or denying the allegations of the Complaint . . . [and] has cooperated, and has agreed to continue to cooperate, with the SEC in this matter." (*Id.*, ¶ 4.)

In addition, during a status conference on April 16, 2008, the SEC told the Court that staff would be recommending amendments to the SEC Complaint to the Commission and expected those amendments to be filed.

**The Related Action**

On March 20, 2008, the Trustee filed an adversary proceeding against McGladrey & Pullen LLP ("M&P") and G. Victor Johnson, styled *Grede v. McGladrey & Pullen LLP et al.*, Adv. No. 08-00167 (Bankr. N.D. Ill.). M&P is a national accounting and auditing firm that served as independent auditor of Sentinel, and Johnson served as the engagement partner for M&P's audit of Sentinel's financial statements for the year ended December 31, 2006. (Exhibit B, Trustee's Complaint, ¶¶ 11-12.)

The Trustee alleges, among other things, that M&P "ignored blatant violations of federal law being committed by certain Sentinel insiders and failed to fulfill its legal duty to report those violations to Sentinel's regulators." (*Id.*, ¶ 2.) In particular, the Trustee alleges that M&P consciously disregarded and failed to report conduct that violated of the Investment Advisers Act, SEC Rule 206(4)-2, and various provisions of the Commodity Exchange Act and CFTC regulations resulting from the pledging of securities that should have been segregated for

3

Sentinel's customers for a bank loan to Sentinel and other instances of commingling. (*Id.*, ¶¶ 23-24, 80-104, 156-60, 175.)

On April 16, 2008, M&P and Johnson filed a motion under 18 U.S.C. § 157(d) to withdraw the automatic reference of the Trustee's adversary proceeding to the Bankruptcy Court so that the case could proceed in the District Court instead. (Exhibit C, Motion to Withdraw the Reference and Memorandum of Law in Support.) According to their Motion, withdrawal is required because M&P and Johnson have the right to a jury trial and do not consent to trial in the Bankruptcy Court and because the Trustee's complaint raises significant open and unresolved issues regarding non-Title 11 federal law. (Mem. at 3, 6.) In particular, M&P and Johnson contend that the "Trustee's claims will require the Court to undertake analysis of . . . the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1—80b-21 and the Commodity Exchange Act" because the "Trustee's Complaint is premised on [their] alleged failure to properly report Sentinel's alleged violations of these federal statutes and their regulatory counterparts." (*Id.* at 6.) M&P and Johnson also contend that adjudicating the Trustee's claims in the District Court would "promote judicial efficiency [and] avoid duplication of effort . . . ." (*Id.* at 9.)

M&P and Johnson's Motion was assigned to Judge Zagel as Case No. 08 C 2205 (N.D. Ill.). Judge Zagel has not set a briefing schedule, and the Trustee has not yet responded to the Motion to Withdraw the Reference.

## ARGUMENT

Reassignment of related cases is governed by Local Rule 40.4. The Rule includes in its definition of related cases those that "involve some of the same issues of fact or law" or "grow out of the same transaction[s] or occurrence[s]." L.R. 40.4(a). "The Rule does not require

4

complete identity of issues in order for cases to be considered related." *Fairbanks Capital Corp.*

*v. Jenkins*, No. 02 C 3930, 2002 WL 31655277, at *3 (N.D. Ill. Nov. 25, 2002).

> The Rule further provides that a case
>
> may be reassigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge and each of the following criteria is met: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

L.R. 40.4(b). Courts routinely grant motions for reassignment where, like here, multiple cases involve some of the same issues of fact and law, the prior-filed action is in the preliminary stages, and the cases are susceptible of disposition in a single proceeding. *See, e.g., River Village West LLC v. The Peoples Gas Light and Coke Co.*, No. 05 C 2103, 2007 WL 541948, at *2 (N.D. Ill. Feb. 14, 2007); *Murry v. America's Mortgage Banc, Inc.*, No. 03 C 5811, 2004 WL 407010, at *2-*3 (N.D. Ill. Mar. 1, 2004); *Fairbanks*, 2002 WL 31655277, at *2.

## I.    The SEC and Auditor Cases are Related.

The Trustee's adversary proceeding against M&P and Johnson and their Motion to Withdraw the Reference are related to the present action because they involve some of the same issues of fact or law and grow out of the same transactions or occurrences. In its adversary proceeding against M&P and Johnson, the Trustee alleges that they had an obligation to report certain violations of law, that they consciously disregarded conduct that violated the Investment Advisers Act and Rule 206(4)-2, and that they failed to report those violations. In the present action, the SEC alleges that, through some of its officers and directors, Sentinel violated those same federal laws. Moreover, the SEC Complaint is predicated on the very same conduct the Trustee alleges M&P and Johnson consciously disregarded and failed to report. Accordingly,

both cases involve the same alleged commingling and leveraging activity and whether that conduct violates the Investment Advisers Act and SEC Rule 206(4)-2 and therefore, under *River Village*, *Murry*, and *Fairbanks*, are related cases under Local Rule 40.4(a).

## II.    The Conditions for Reassignment are Satisfied.

All of the conditions for reassignment under Local Rule 40.4(b) also are satisfied.

*First*, both cases are pending in this Court. M&P and Johnson's Motion to Withdraw was assigned to Judge Zagel as Case No. 08 C 2205 (N.D. Ill.). It is beyond dispute that Local Rule 40.4 applies to motions to withdraw the reference that are assigned by lot to a district court judge. *See* Local Rule 40.3.1(d) ("The provisions of LR 40.4 are applicable to the items described in item (b)," which includes "motions pursuant to 18 U.S.C. § 157(d)"). M&P and Johnson's Motion also will determine to what extent, if any, the Trustee's underlying adversary proceeding against M&P and Johnson will proceed in this District Court.

*Second*, the handling of the matters between the Trustee, M&P, and Johnson by only one judge is likely to result in a substantial saving of judicial time and effort. In *Fairbanks*, the Court held that adjudicating common issues before one judge instead of multiple judges would promote judicial economy and "enhance[]" the "overall administration of justice." 2002 WL 31655277, at *2.[1] Here, too, reassigning Case No. 08 C 2205 to this Court would promote judicial economy and enhance the administration of justice by, among other things, protecting against inconsistent results and having the judge most familiar with the facts and law decide the common issues.

For example, according to M&P and Johnson's Motion, in deciding whether and the extent to which the reference to the Bankruptcy Court should be withdrawn, one of the primary

---

[1] The Trustee will address in his response to the Motion to Withdraw the Reference whether certain matters relating to the adversary proceeding against M&P and Johnson should remain in the Bankruptcy Court. However, any matters not retained by the Bankruptcy Court clearly should be addressed by this Court rather than an entirely new judge.

issues is whether the Trustee's claims involve mere application of the Investment Advisers Act to the facts or whether they require the Court to analyze open and unresolved issues under the Act and the SEC rules thereunder. (Exhibit C, Mem. at 6, *citing In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952-54 (7th Cir. 1996).) It makes no sense to have one judge (Judge Kocoras) determine the extent to which the Investment Advisers Act applies to Sentinel and the commingling and leveraging activity of certain of its insiders in one context and another judge determine the same issue either in the context of the Motion to Withdraw the Reference or in the context of substantively addressing any claims that are ultimately resolved in the District Court. If M&P and Johnson's Motion is granted and, as they claim, there are open and unresolved issues involving the Investment Advisers Act, then it would best preserve the parties' and court's resources to have those issues before this Court – the court that ultimately will be deciding how that law applies to Sentinel and any other parties that may be added to the SEC action.

*Third*, reassignment would not delay the proceedings in the present action. The Agreed Order has preserved the status quo, this case is still in the pleading state, and discovery has not yet commenced. Thus, as in *River Village*, *Murry*, and *Fairbanks*, this action has not progressed to the point where reassigning related matters would cause any delay.

*Fourth*, the matters are susceptible of disposition in a single proceeding. In *Fairbanks*, the Court held that matters are susceptible of disposition in a single proceeding if adjudication of the common issues would be outcome determinative in one of the related cases. *See* 2007 WL 31655277, at *3. As the Court stated in *Fairbanks*, "although Rule 40.4(b) requires a showing that the cases to be reassigned be susceptible of determination in a single proceeding with the earlier case already pending on the judge's docket, it does not require proof that the cases can or should be consolidated." *Id.* The Court held that the related cases were susceptible of

7

disposition in a single proceeding because resolution of the common issues "will be outcome-determinative" of some (but not all) of the related cases. *Id.* The fact that one of the cases sought to be reassigned raised additional issues of fact and law did not alter the fact that the related cases were "susceptible of being determined in a single proceeding." *Id.* n.1.

Here, resolution of the common issues will be outcome determinative of the issues raised in the SEC action. In order to resolve the Trustee's claims that M&P and Johnson breached their obligations as auditors by consciously disregarding and failing to report conduct alleged to have violated the Investment Advisers Act and SEC Rules, the court will necessarily have to determine whether that conduct did in fact violate those laws. If the court so finds, then the sole matter at issue in the SEC action – whether Sentinel, through the undisclosed commingling and leveraging activity of certain insiders, violated the Investment Advisers Act and SEC Rules – will have been determined. Therefore, as in *Fairbanks*, the related cases here are susceptible of disposition in a single proceeding.

**CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that Case No. 08 C 2205 be reassigned from Judge Zagel to this Court.

Dated: April 24, 2008

Respectfully submitted,

FREDERICK J. GREDE, not individually
but as Chapter 11 Trustee of Sentinel
Management Group, Inc.


By: s/ J. Kevin McCall
    One of his attorneys


J. Kevin McCall (ARDC # 3125685)
Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL  60611
Phone: (312) 222-9350
Facsimile: (312) 527-0484

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) )  ) Case No. 07 C 4684 |
| Plaintiff, | ) ) |
| v. | ) Honorable Charles P. Kocoras ) |
| SENTINEL MANAGEMENT GROUP, INC. | ) ) |
| Defendant. | ) ) |

REPLY MEMORANDUM IN SUPPORT OF
TRUSTEE'S MOTION FOR REASSIGNMENT OF RELATED CASE

The Trustee's action against Sentinel's auditors (the "McGladrey action")[1] should be reassigned to this Court because it arises out of the same transactions and occurrences and involves the same factual and legal issues as the SEC action. Therefore, reassignment will promote judicial efficiency and is warranted under the Local Rules. L.R. 40.4(b), *Manual for Complex Litigation, Fourth* § 31.4 ("Manual").

Of the matters currently assigned to other District Court judges, the two matters before Judge Zagel involve motions to withdraw the bankruptcy reference as to adversary proceedings that arise from the same events that led to the filing of the SEC action and the recently-filed CFTC action. These related cases are set forth in the chart below:

| Bankruptcy Court | | |
|---|---|---|
| **Parties** | **Case No.** | **Date Filed** |
| *In re Sentinel Management Group, Inc. ("Sentinel")* | 07 B 14987 | 08/17/07 |
| *Grede v. Bloom et al.* | 07 A 00981 | 10/11/07 |
| *Grede v. The Bank of New York ("BONY")* | 08 A 00127 | 03/03/08 |
| *Grede v. M&P and Johnson* | 08 A 00167 | 03/20/08 |
| *Grede v. Greenberg* | 08 A 00238 | 04/28/08 |

---

[1] *Grede v. McGladrey & Pullen LLP ("M&P") and G. Victor Johnson*, Case No. 08 C 2205 (Zagel, J.).

| District Court | | | |
|---|---|---|---|
| **Parties** | **Case No.** | **Date Filed** | **Judge** |
| *SEC v. Sentinel* | 07 C 4684 | 08/20/07 | Judge Kocoras |
| *Shatkin v. Bloom et al.* | 07 C 5076 | 09/10/07 | Judge Andersen (The Trustee has filed a motion to preliminarily enjoin that action from proceeding pursuant to the "limited fund" doctrine) |
| *Grede v. M&P* | 08 C 2205 | 04/16/08 (Motion to withdraw the reference) | Judge Zagel (Motion for reassignment filed 04/24/08) |
| *CFTC v. Sentinel et al.* | 08 C 2410 | 04/28/08 | Judge Shadur (CFTC Motion for reassignment filed 05/08/08) |
| *Grede v. BONY*[2] | 08 C 2582 | 05/02/08 (Motion to withdraw the reference) | Judge Zagel (Motion for reassignment filed 05/16/08) |

All of these cases relate to the demise of Sentinel, a cash management firm that is now in chapter 11 bankruptcy. Sentinel was registered with the SEC as an investment adviser and with the CFTC as a futures commission merchant ("FCM"). The conduct that led to Sentinel's demise and that constitutes the core set of facts central to all of these cases involved the improper commingling, pledging, and leveraging of funds deposited by Sentinel's clients and the failure to properly disclose that conduct on Sentinel's audited financial statements.

In sum, certain Sentinel insiders (1) commingled funds and securities by arbitrarily allocating securities and income from securities to customers in disregard of their obligations to segregate customer funds; (2) unlawfully commingled securities amongst customer and house accounts; (3) pledged securities that were supposed to be segregated for customers for a bank loan to Sentinel; and (4) used that bank loan to finance in part billions of dollars worth of

---

[2] It appears that BONY's motion to withdraw the reference was assigned to Judge Zagel not by lot, but because on the civil cover sheet, BONY indicated that its motion was "associated [with a] bankruptcy matter perviously [sic] adjudicated by a judge of this Court" – namely, the Trustee's adversary proceeding against M&P and Johnson. As indicated in the chart above, in fact Judge Zagel has not adjudicated anything in the Trustee's action against M&P and Johnson. Moreover, BONY did not indicate that the Trustee had filed a motion to reassign that case to this Court and did not indicate that the only Sentinel-related matter in which any judge, other than Judge Squires, ever "adjudicated" anything or entered any order whatsoever was this matter in which orders were entered pursuant to the SEC's request for preliminary relief. (*See* 08/20/07 and 09/24/07 Orders.)

repurchase transactions that resulted in customer portfolios being highly leveraged and that themselves violated regulations of both the CFTC and SEC (collectively "commingling, pledging, and leveraging conduct"). None of that conduct was properly disclosed to Sentinel's customers or on Sentinel's audited financial statements even though Sentinel's auditors clearly knew about all of that conduct. Notwithstanding their knowledge, Sentinel's auditors certified financial statements that hid rather than disclosed the commingling, pledging, and leveraging activity.

The facts and legal issues common to these actions are summarized below:

| Case | Common Conduct | Common Legal Issues |
|---|---|---|
| *Grede v. Bloom et al.* (07 A 00981)[3] | Commingling, pledging, and leveraging by certain Sentinel insiders and failure to disclose this conduct to customers | Whether commingling, pledging, and leveraging and failure to disclose the same breached fiduciary duties owed to Sentinel |
| *SEC v. Sentinel* (07 C 4684) | Commingling, pledging, and leveraging by certain Sentinel insiders resulting from and permitted by flawed account structure and failure to disclose this conduct to customers; Sentinel's false books and records | Whether commingling, pledging, and leveraging, failure to disclose the same, and false books and records violated Section 206 of the Investment Advisers Act of 1940 and SEC Rule 206(4)-2 |
| *CFTC v. Sentinel et al.* (08 C 2410) | Commingling, pledging, and leveraging by certain Sentinel insiders and filing of false financial statements with CFTC which failed to properly disclose this conduct | Whether commingling, pledging, and leveraging and false financial statements regarding the same violated Sections 4b, 4d, 4g, and 6(c) of the Commodities Exchange Act ("CEA") and CFTC Rules 1.10, 1.20, 1.22, and 1.23 |
| *Grede v. M&P and Johnson* (08 A 00167, 08 C 2205) | Auditors' conscious disregard of commingling, pledging, and leveraging by certain Sentinel insiders, failure to report violations of law to regulators as required, and certification of false financial statements submitted to CFTC which failed to properly disclose this conduct | Whether commingling, pledging, and leveraging violated Section 206 of the Investment Advisers Act, SEC Rule 206(4)-2, Section 4d of CEA, and CFTC Rule 1.20; whether auditors breached duties by certifying false financial statements and failing to report that conduct to regulators under CFTC rules; whether auditors aided and abetted Sentinel insiders' breach of their fiduciary duties to Sentinel |

---

[3] This action is pending in the Bankruptcy Court and not subject to any reassignment motion.

| *Grede v. BONY* (08 A 00127, 08 C 2582) | BONY's participation in commingling, pledging, and leveraging by establishing flawed account structure, extending credit, and asserting lien over securities that should have been segregated for customers and BONY's receipt of false financial statements submitted to CFTC | Whether Sentinel insiders' conduct violated Section 206 of the Investment Advisers Act, SEC Rule 206(4)-2, Section 4d of CEA, and CFTC Rule 1.20; whether account structure established by BONY violated requirements of Investment Advisers Act and CEA; whether BONY acted inequitably by itself violating the CEA and CFTC Rule 1.20; and whether BONY aided and abetted Sentinel insiders' breach of their fiduciary duties to Sentinel |
|---|---|---|

Both M&P and Johnson and BONY have moved to withdraw the reference of the adversary proceedings against them to the Bankruptcy Court on grounds that there are open and unresolved issues concerning the applicability of the Investment Advisers Act, CEA, and SEC and CFTC regulations. The Trustee opposes both motions and contends that withdrawal of the reference is not warranted at this time.[4] The Trustee believes that the greatest efficiencies can be achieved by having the Bankruptcy Court handle all pre-trial matters involving all of the related bankruptcy and adversary proceedings. However, to the extent that any matters may be before the District Court, they should be handled by a single judge, which according to the Local Rules is the judge to whom the earliest-filed, related case is pending.

It simply does not make sense for two other judges in this District to decide matters involving the very same issues that are already before this Court and the Bankruptcy Court. Instead, it would preserve judicial resources and prevent inconsistent results for one judge in this District – and not three judges – to learn the same set of complex facts and apply the same federal law and regulations to those facts to the extent any matters are not addressed by the Bankruptcy Court.

---

[4] The Trustee's response to M&P and Johnson's motion to withdraw the reference is due on May 29, 2008, and the matter is set for hearing on July 23, 2008. No briefing schedule has been set on BONY's motion to withdraw the reference. The Court has stated that it will advise the parties if it needs a response from the Trustee.

The Trustee, CFTC, and SEC all agree that these efficiencies can be achieved by having the related cases assigned to this Court. Rather than accepting the obvious practicality of reassignment, M&P and Johnson raise a hodgepodge of arguments that ignore both the practicalities and the legal authority supporting reassignment.

## ARGUMENT

### I.     The Trustee's Motion Is Not Premature.

According to M&P and Johnson, the fact that a responsive pleading has not been filed in either of the related cases requires denial of the Trustee's Motion under Local Rule 40.4(c). (Opp. at 5.) That argument is frivolous.

In *Freeman v. Bogusiewicz*, No. 03 C 2908, 2004 WL 1879045, at *1 (N.D. Ill. Aug. 11, 2004), the Court rejected the argument that Local Rule 40.4(c) requires motions for reassignment to only be made after a responsive pleading has been filed. Instead, the Court held that as long as the responding party had "sufficient opportunity to file briefs, supplemental briefs, and supporting exhibits with respect to the motion on the question of relatedness and reassignment," then the motion "is proper and ready for review." *Id.* M&P and Johnson already have filed two briefs (and counting), appeared before Your Honor on this issue, and will have filed a motion to dismiss on the merits before the present motion is fully briefed. M&P and Johnson's plea in abatement should be rejected.

### II.    Reassignment Would Achieve Significant Efficiencies.

Under Local Rule 40.4, one of the factors weighing in favor of reassignment is where "the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort." L.R. 40.4(b)(2). In a passage that could have been specifically written for this case, the Manual for Complex Litigation strongly encourages courts to reassign related securities and bankruptcy cases:

5

> In addition to private actions, the SEC or other administrative agencies may institute proceedings . . . . A party may also be a debtor in bankruptcy, which may result in . . . related adversary proceedings . . . . All related litigation in the same court, including pertinent aspects of bankruptcy proceedings, ordinarily should be assigned or transferred to one judge for initial supervision and planning.

Manual § 31.4. That is precisely what the Trustee seeks here.

The need for the practical approach endorsed by the Manual is particularly acute in the Sentinel related matters. Sentinel is no longer an operational entity. It owes creditors hundreds of millions of dollars more than the value of the assets it has to distribute. The Trustee has an obligation to Sentinel's creditors to seek to maximize the value of the estate while minimizing its expenses. These duties obligate the Trustee to urge upon this Court and the other judges to whom these related matters are assigned to adopt the most practical approach for the expeditious and cost-effective resolution of these matters. Limiting the number of judges to whom these matters are assigned will substantially further the goals embodied in both the Bankruptcy Code and the Manual that the assets of the estate be preserved through, among other things, using procedural mechanisms such as reassignment to promote efficiency.

A.  Reassignment would allow the same complex set of facts and transactions to be before one Judge in this District.

The Sentinel insiders' commingling, pledging, and leveraging conduct involves a complex set of facts that is central to all four actions pending in this Court. The SEC and CFTC actions and the adversary proceedings against M&P and Johnson and BONY all contain detailed allegations about Sentinel's three segregated customer groups, and the manner in which securities were improperly commingled amongst those segregated accounts and with a non-segregated house account owned by Sentinel and pledged to collateralize a loan from BONY to Sentinel, which, in turn, was used to obtain additional leveraged financing in the form of repurchase transactions. (Ex. A to 04/24/08 Mem., SEC Cmplt., ¶¶ 14-16, 20-25; Ex. A, CFTC

6

Cmplt., ¶¶ 13-29; Ex. B to 04/24/08 Mem., Trustee/M&P Cmplt., ¶¶ 28-43; Ex. B, Trustee/BONY Cmplt., ¶¶ 23-49, 100-13.) In order to adjudicate these related cases, either the Bankruptcy Court or a Court in this District is going to have to understand the same set of complex facts involving Sentinel's account structure and commingling, pledging, and leveraging activity.

Further common factual issues are found in the CFTC allegations that Sentinel filed false financial statements on CFTC Form 1-FR that "falsely reported that Sentinel owned no securities purchased under resale agreements [the leveraging activity] and had no amounts payable, including no amounts payable to BONY, despite the existence of the BONY loan [the pledging activity]." (CFTC Cmplt., ¶ 32.) Paralleling those allegations, the SEC complaint alleges that the commingling, pledging, and leveraging conduct (including the commingling and pledging of securities for the bank loan and the repurchase transactions) was not properly disclosed to customers and that Sentinel did not keep "accurate books and records [] required to be kept under the federal securities laws." (SEC Cmplt., ¶¶ 2-3, 24-25.)

Likewise, the Trustee's complaint against M&P and Johnson contains nearly identical allegations regarding M&P's:

- Conscious disregard of inconsistencies between Sentinel's books and records and bank statements (Cmplt., ¶¶ 81-86);

- Conscious disregard of segregation violations and misrepresentations to customers (Cmplt., ¶¶ 81-97);

- Certification of financial statements that did not properly disclose the commingling and pledging of securities for the BONY loan or Sentinel's repurchase transactions (Cmplt., ¶¶ 106-17, 142-55);

- Certification of a false annual Form 1-FR that did not include the BONY loan or Sentinel's repurchase transactions and review of false monthly 1-FRs that contained the same misstatements (Cmplt., ¶¶ 118-41, 159); and

- Failure to report on Sentinel's financial statements and to regulators the regulatory violations with which the SEC and CFTC have now charged Sentinel (Cmplt., ¶¶ 156-60).

Clearly, adjudication of the SEC, CFTC and Trustee actions will require review of and deposition testimony concerning the same books and records, customer statements, and financial statements and the same commingling, pledging, and leveraging activity.

Given those common facts, allegations, documents, and witnesses, it is apparent that to the extent that matters relating to the Trustee's claims against M&P and Johnson are addressed in the District Court rather than the Bankruptcy Court, significant efficiencies would be achieved by having the related cases before a single judge. As the CFTC notes, "there are efficiencies to be gained in the discovery process by having one judge," such as the "coordination of documents and other discovery requests, as appropriate," and "appropriate coordination of depositions." (Ex. C, CFTC Mem. at 6.) In particular, the CFTC contends that these efficiencies could be achieved between the CFTC and SEC actions and "through coordination of the CFTC's and Trustee's actions" with the SEC action. (*Id.* at 5, n.2.) Such efficiencies are the very reason why the Local Rules provide for reassignment. *See River Village West LLC v. The Peoples Gas Light and Coke Co.*, 2007 WL 541948, at *2 (N.D. Ill. Feb. 14, 2007); Manual §§ 10.123, 10.225, and 11.464.

B.   <u>Reassignment would prevent the risk of inconsistent rulings.</u>

Under Local Rule 40.4, another factor that weighs in favor of reassignment is whether the cases are susceptible of disposition in a single proceeding – *i.e.,* whether adjudication of the common issues would be outcome determinative in a single proceeding. *See Fairbanks Capital Corp. v. Jenkins*, 2002 WL 31655277, at *3 (N.D. Ill. Nov. 25, 2002).[5] The goal advanced by

---

[5] The SEC has noted that actions of other parties should not formally be consolidated with its action without its consent. But the SEC also correctly notes that the Trustee does not seek consolidation, and as

this factor is to prevent the risk that two judges deciding the same legal issues would make inconsistent rulings. *See id.* (noting Seventh Circuit's disapproval of cases "before different judges" causing "numerous and disparate decisions"); *River Village*, 2007 WL 541948, at *2 (noting importance of "consistent proceeding[s]").

Here, in order to resolve the Trustee's claim against M&P and Johnson that they breached their duties as auditors by failing to report violations of the Investment Advisers Act, CEA, and SEC and CFTC regulations, a court will have to first determine that Sentinel violated those laws and regulations and that it filed false financial statements. Determination of these issues is dependent upon an evaluation of the commingling, pledging, and leveraging conduct that is common to all these related matters. Those are the very issues already before this Court in the related SEC action and which also exist in the CFTC action. Therefore, reassignment would promote consistent rulings on identical legal issues and satisfies Local Rule 40.4.

C.    Reassignment is appropriate even if there are some unique issues.

M&P and Johnson contend that reassignment would not "result in a judicial savings of any time" because of the existence of unique issues. (Opp. at 10.) That is wrong from both a practical and legal perspective.

M&P and Johnson seek to draw false distinctions between the common issues involved in the SEC action and the Trustee's claims against them. For example, they contend that the SEC's claims involve conduct that occurred "months after the last audit" performed by M&P. (*Id.* at 8.) But the SEC Complaint is not limited to post-March 2007 conduct and in fact involves the very same conduct and violations of the Investment Advisers Act that the Trustee alleges M&P and

---

*Fairbanks* makes clear, Local Rule 40.4 "does not require proof that the cases can or should be consolidated." 2002 WL 31655277, at *2-*3. Clearly the SEC does not object to reassignment but instead recognizes that efficiencies will be achieved by reassignment.

Johnson consciously disregarded and failed to report to Sentinel's regulators. (SEC Cmplt., ¶¶ 1-4, 23, 25.)

M&P and Johnson also contend that there are unique issues involving "the duties of the auditors." (*Id.* at 10.) However, the duties of Sentinel's auditors to report regulatory violations and opine on Sentinel's regulatory compliance are inexorably linked to the very same conduct at issue in the SEC case, including the SEC's allegations that Sentinel maintained false books and records. Moreover, the financial statements at issue in the McGladrey action are directly at issue in the CFTC action. In any event, the existence of some unique issues is beside the point. As *Fairbanks* makes clear, there need only be <u>some</u> common dispositive issues for reassignment of related cases to be warranted. 2002 WL 31655277, at *2-*3.

III.   **There are Genuine Live Disputes Pending Before This Court.**

M&P and Johnson also seek to downplay the efficiencies that would be achieved by reassignment by mischaracterizing the SEC action as "largely dormant." (Opp. at 7-10.) That argument is factually incorrect and legally inapposite. As this Court well knows, the SEC staff has advised this Court that it expects to file an amended complaint. M&P and Johnson seek to avoid the effect that these amendments will have on the SEC action by noting that the "Trustee does not identify any substance to this Amendment." (*Id.* at 6). However, that criticism is unwarranted because the particulars of any proposed amendments must be approved by the Commission before they can be made public. The salient point here is that the expected amendments obviously relate to these same circumstances and demonstrate that this case is far from dormant.

M&P and Johnson's "dormancy" argument also ignores the fact that the SEC also stated in open court that it has already received millions of pages of documents produced by Sentinel

and other parties (including M&P) relating to the issues raised in its Complaint. Indeed, as previously reported to the Court, that review process has been part and parcel of the SEC's determination of what further action it should take. The CFTC complaint, which raises identical issues as those raised in the Trustee's action, and its motion for reassignment also demonstrate that this matter is far from dormant.

Next, M&P and Johnson contend that the two cases are not susceptible to disposition in a single proceeding because there is not "a genuine dispute in the SEC Action." (Opp. at 8-10.) But that is just a recapitulation of their discredited "dormancy" argument dressed up with the unremarkable assertion that the Trustee and SEC agree "over the application of the Investment Advisers Act." (*Id.*) Neither *Fairbanks* nor any of the other applicable authorities suggest that the extent to which the Trustee and SEC agree on certain issues is relevant to whether the McGladrey action should be reassigned to this Court.

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests reassignment of the McGladrey action to this Court. The issue of reassignment is one of practicality and judicial efficiency. The Local Rules and the Manual dictate that those efficiencies can and should be achieved by reassignment.

Dated: May 16, 2008

Respectfully submitted,

FREDERICK J. GREDE, not individually
but as Chapter 11 Trustee of Sentinel
Management Group, Inc.


By: s/ J. Kevin McCall
    One of his attorneys

J. Kevin McCall (ARDC # 3125685)
Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL  60611
Phone: (312) 222-9350
Facsimile: (312) 527-0484

## CERTIFICATE OF SERVICE

I, Jeffrey S. Eberhard, an attorney, certify that on May 16, 2008 I caused a copy of the

foregoing Reply in Support of Motion for Reassignment of Related Case to be served by ECF to:

> Andrea Robin Wood
> U.S. Securities and Exchange Commission
> 175 W. Jackson Blvd. 900
> Chicago, IL 60604

and by facsimile to:

> Richard J. Mason
> Patricia K. Smoots
> Michael E. Schmahl
> McGuire Woods, LLP
> 77 W. Wacker Drive, Suite 4400
> Chicago, Illinois 60601
> Fax:  312-849-3690

> Steven M. Farina
> Thomas H.L. Selby
> Williams & Connolly LLP
> 725 12th Street, N.W.
> Washington, D.C. 20005
> Fax: 202-434-5029

> Mark H. Bretscher
> Commodity Futures Trading Commission
> 525 W. Monroe St., Suite 1100
> Chicago, Illinois 60661
> Fax:  312-596-0714

s/Jeffrey S. Eberhard

13

# EXHIBIT 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>SENTINEL MANAGEMENT GROUP, INC.,<br><br>    Debtor. | CASE NO. 07 B 14987<br><br>Hon. John H. Squires |
| FREDERICK J. GREDE, as Chapter 11<br>Trustee for Sentinel Management Group, Inc.,<br><br>    Plaintiff,<br><br>  v.<br><br>MCGLADREY & PULLEN, LLP and G.<br>VICTOR JOHNSON,<br><br>    Defendants. | ADV. NO. 08 A 00167<br><br>JURY TRIAL DEMANDED |

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AND STRIKE[1]

Richard J. Mason (ARDC #1787659)
Patricia K. Smoots (ARDC #6194076)
Michael M. Schmahl (ARDC #06275860)
MCGUIREWOODS LLP
77 W. Wacker Drive, Suite 4400
Chicago, Illinois 60601
Phone: (312) 849-8100
Facsimile: (312) 849-3690

Steven M. Farina
Thomas H. L. Selby
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5526
Facsimile: (202) 434-5029

*Of Counsel*

Attorneys for Defendants McGladrey & Pullen, LLP and G. Victor Johnson

---

[1] Because the above-captioned adversary proceeding is a non-core related proceeding, only the District Court has authority to enter an order ruling on the Motion to Dismiss. Defendants' Motion to Withdraw the Reference is pending.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

      A.    Sentinel's Need To Attract Client Investments. ..................................... 2

      B.    The Blooms and Charles Mosely Controlled Sentinel. ........................... 2

      C.    Sentinel's Bank of New York Loan. ....................................................... 3

      D.    Sentinel's Alleged Fraud .......................................................................... 3

      E.    Sentinel Had Little Capital To Lose. ...................................................... 5

      F.    McGladrey's Audit Report. ..................................................................... 6

      G.    The Claims Pleaded Against Defendants. ................................................ 6

ARGUMENT .................................................................................................................. 7

I.      THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED UNDER THE
        DOCTRINE OF *IN PARI DELICTO*. ............................................................... 7

      A.    Dismissal Is Appropriate Where Pleaded Facts Establish the Defense
          of *In Pari Delicto*. ................................................................................. 8

      B.    The Pleaded Facts Establish that Sentinel Directly Participated in the
          Wrongdoing. .............................................................................................. 9

            1.    The Bankruptcy Trustee Stands in the Shoes of Sentinel. ........................ 9

            2.    Sentinel Directed and Implemented the Fraud. ........................................ 9

      C.    The "Adverse Interest Exception" Is Inapplicable Under the Pleaded
          Facts. ........................................................................................................ 12

II.     PLAINTIFF'S NEGLIGENCE/MALPRACTICE CLAIM SHOULD BE
        DISMISSED FOR LACK OF CAUSATION. ................................................... 15

III.    THE COURT SHOULD STRIKE THE DAMAGES DEMAND. .................................. 17

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp. I)*, 353 B.R. 324 (Bankr. D.D.C. 2006) ...............................................................................................................................8, 14

*Askanase v. Fatjo*, 828 F. Supp. 465 (S.D. Tex. 1993).................................................14

*Askanase v. Fatjo*, No. Civ. A. H-91-3140, 1996 WL 33373364 (S.D. Tex. Apr. 1, 1996) .........16

*Baena v. KPMG LLP*, 453 F.3d 1 (1st Cir. 2006).........................................................8, 14

*Bank of Marin v. England*, 385 U.S. 99 (1966) ...............................................................9

*Beck v. Deloitte & Touche*, 144 F.3d 732 (11th Cir. 1998) ...........................................14

*Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972)................................19

*Cenco v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982).....................7, 10, 11, 12

*Cepa Consulting v. King Main Hurdman & Peat Marwick Main & Co. (In re Wedtech Sec. Litig.)*, 138 B.R. 5 (S.D.N.Y. 1992) ........................................................................13

*Claybrook v. Broad & Cassel, P.A. (In re Scott Acquisition Corp.)*, 364 B.R. 562 (Bankr. D. Del. 2007)....................................................................................................................9

*Cortina v. Hotel & Rest. Employees Union*, No. 06-CV-6850, 2008 WL 857165 (N.D. Ill. Mar. 31, 2008)..........................................................................................................8

*FDIC v. Deloitte & Touche*, 834 F. Supp. 1129 (E.D. Ark. 1992) ................................16

*FDIC v. Ernst & Young*, 967 F.2d 166 (5th Cir. 1992) ...........................................12, 15

*Federalpha Steel LLC Creditors' Trust v. Fed. Pipe & Steel Corp.*, 368 B.R. 679 (N.D. Ill. 2006)......................................................................................................................18

*Fehribach v. Ernst & Young LLP*, 493 F.3d 905 (7th Cir. 2007) ..................................15

*Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) .........................................................15

*In re Chi., Rock Island & Pac. R.R.*, 860 F.2d 267 (7th Cir. 1988)................................9

*Indemnified Capital Invs. SA v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406 (7th Cir. 1993) ..........................................................................................................................18

*Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230 (7th Cir. 2003) .................8, 10, 12

*Maxwell v. KPMG LLP*, 520 F.3d 713 (7th Cir. 2008)............................................17, 19

*Monarch Gems v. Malca-Amit USA*, No. 04 C 7664, slip op. (N.D. Ill. Sept. 27, 2007) ...............2

*Nisselson v. Lernout*, 469 F.3d 143 (1st Cir. 2006), *cert. denied*, 127 S. Ct. 2131 (2007) .......8, 14

*PNC Bank, Ky., Inc. v. Hous. Mortg. Corp.*, 899 F. Supp. 1399 (W.D. Pa. 1994)......................16

*Risetime, Inc. v. Colo. CustomWare, Inc.*, No. 03 C 4457, 2003 WL 22478762 (N.D. Ill. Oct. 31, 2003) ............................................................................................................8

*Schacht v. Brown*, 711 F.2d 1343 (7th Cir. 1983) .......................................................13

*Schokbeton Indus., Inc. v. Schokbeton Prods. Corp.*, 466 F.2d 171 (5th Cir. 1972) ......................9

*Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1281 (10th Cir. 1996) ...................................................................................................................9

*Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994) ...........................................18, 19

*Terlecky v. Hurd (In re Dublin Sec., Inc.)*, 133 F.3d 377 (6th Cir. 1997) .......................8

*United States v. LaGrou Distrib. Sys., Inc.*, 466 F.3d 585 (7th Cir. 2006)..................................11

*United States v. Lewis*, 411 F.3d 838 (7th Cir. 2005).........................................................8

*United States v. One Parcel of Land*, 965 F.2d 311 (7th Cir. 1992)..........................................10

*Williams v. Cont'l Stock Transfer & Trust Co.*, 1 F. Supp. 2d 836 (N.D. Ill. 1998) ....................12

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004)........................................8

## STATE CASES

*Bishop v. Baz*, 575 N.E.2d 947 (Ill. App. Ct. 1991) .....................................................15

*Borowski v. Von Solbrig*, 303 N.E.2d 146 (Ill. App. Ct. 1973), *aff'd*, 238 N.E.2d 301 (Ill. App. Ct. 1995)......................................................................................................15

*Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828 (N.Y. 1985)...................................................12

*Craig v. Metro Bank of Dallas*, 601 S.W.2d 734 (Tex. Civ. App. 1980) .....................................15

*King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155 (Ill. App. Ct. 2005)..................7, 10, 12

*Mid-Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.*, 715 N.E.2d 906 (Ind. Ct. App. 1999)......................................................................................13

*Seidman & Seidman v. Gee*, 625 So. 2d 1 (Fla. Dist. Ct. App. 1992) ...........................................14

## RULES

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................8

Federal Rule of Civil Procedure 12(f) ....................................................................................17

## TREATISE

William M. Fletcher, 3 *Fletcher Cyclopedia of the Law of Private Corporations* § 821, at
112 (rev. vol. 2002)...............................................................................................................13

## INTRODUCTION

In this matter, the Trustee in Bankruptcy of Sentinel Management Group, Inc. ("Sentinel"), standing in the shoes of Sentinel, asserts claims against Sentinel's outside auditor arising out of Sentinel's own fraudulent acts. The Complaint alleges that defendant McGladrey & Pullen, LLP ("McGladrey") and its lead auditor G. Victor Johnson ("Johnson") (together, "Defendants") are liable to Sentinel for failure to report Sentinel's own fraud to regulators, and for opining on Sentinel's own financial statements and regulatory reports.

The Trustee's claims are barred under a straightforward application of the *in pari delicto* doctrine. Under this well-settled rule, a company—or the Trustee standing in its shoes— cannot bring suit against its auditor for failing to discover or report the company's own fraud. This ground, standing alone, warrants dismissal of the Complaint in its entirety.

Independently, the claims should be dismissed for a failure to allege facts that would establish loss causation. Because the fraud was the company's own wrongdoing, and known to the company, as a matter of law the company did not rely on McGladrey's report on Sentinel's financial statements. Accordingly, there can be no loss causation. This Court should join the many other courts that have dismissed claims where this requisite element is missing.

Finally, the prayer for damages should be stricken from the Complaint. The Seventh Circuit has recently admonished bankruptcy trustees not to assert outsized damage claims unsupported by actual losses. Here, the allegations in the Complaint that Sentinel had virtually no capital (and thus, virtually no capital to lose) makes clear that the damages claim of $550,000,000 could not possibly be a well-pleaded prayer for relief. The inclusion of a nine-figure number in the Complaint is clearly intended for its *in terrorem* effect and nothing else. Even if the Complaint were to survive (and it should not) the prayer for damages should be stricken.

## STATEMENT OF FACTS[2]

### A.    Sentinel's Need To Attract Client Investments.

Sentinel's business was to manage cash for various sophisticated clients, including hedge funds, futures commission merchants ("FCMs"), financial institutions, pension plans, and others.  Compl. ¶ 28.  Although Sentinel itself was registered with the Commodities Futures Trading Commission ("CFTC") as an FCM, it did not engage in commodities trading, but instead managed investments for its clients.  *Id.* ¶ 29.  Sentinel's income was derived from the assets it held under management; Sentinel charged its customers a management fee, typically a set number of basis points.  SMG Compl. ¶ 35.[3]  Sentinel solicited clients by offering them the opportunity to participate in a variety of investment programs.  *Id.* ¶ 29.  Sentinel used a website and other marketing materials to tout its investment objective "to achieve the highest yield consistent with preservation of principal and daily liquidity."  Moes ¶ 29.  In addition to the customer funds under management, Sentinel owned a "house" account in which it maintained securities for its own benefit and the benefit of insider-investors.  Compl. ¶ 34.

### B.    The Blooms and Charles Mosely Controlled Sentinel.

Sentinel is a privately-held corporation that was owned and operated by Philip Bloom and his son, Eric Bloom.  Compl. ¶ 5; SMG Compl ¶ 14–15.  At all relevant times Philip

---

[2]    These "facts" are taken from the Complaint and are accepted as true solely for purposes of this Motion.  Plaintiff's proposed legal conclusions, in contrast, are not facts and need not be accepted.  *See Monarch Gems v. Malca-Amit USA*, No. 04 C 7664, slip op. at 1 (N.D. Ill. Sept. 27, 2007) (legal conclusions masquerading as facts need not be accepted).

[3]    The Trustee has described Sentinel's fraud in several pleadings in this District.  Complaints filed by the Trustee against Sentinel's management, Case No. 07 B 14987, and against the Bank of New York, Case No. 07 B 14987, are referred to herein as "SMG Compl." and "BONY Compl.," respectively and are attached as Exhibits 1 and 2.  The Declaration of David Moes, submitted by the Trustee in support of a preliminary injunction motion in the case against Sentinel's management, is cited herein as "Moes" and is attached as Exhibit 3.

Bloom was the Chairman of the Board of Sentinel and directly or indirectly owned and
controlled a significant percentage of Sentinel's stock.  SMG Compl. ¶ 14.  Eric Bloom served as
President and CEO of Sentinel at all relevant times, and he also owned and controlled a
significant percentage of Sentinel's stock.  *Id.* ¶ 15.  Together with Sentinel's Senior Vice
President and chief trader, Charles Mosley, the Blooms controlled the operations of Sentinel on a
day-to-day basis.  *Id.* ¶¶ 14–16.  The Blooms and Mosley (the "Insiders") are defendants in an
adversary action pending before the Bankruptcy Court in which the Trustee has alleged that these
insiders operated or controlled every facet of Sentinel, including its website, accounting systems,
investments, Bank of New York ("BONY") accounts, the content of customer statements, and
financial arrangements involving more than $1 billion in assets.  *See, e.g., id.* ¶¶ 50–52, 57–60,
and 65–90.

**C.     Sentinel's Bank of New York Loan.**

Sentinel maintained a line of credit with BONY to provide liquidity for
operations.  Compl. ¶ 36.  Sentinel would draw funds from BONY as needed to facilitate
customer redemptions and would later repay the loan with proceeds from the sale of securities.
*Id.*  Sentinel also used the BONY loan to purchase securities for customers who placed an order
but did not fund the purchases until after banks were closed.  Moes ¶¶ 58–59.

**D.     Sentinel's Alleged Fraud.**

As alleged in the Complaint, Sentinel purportedly engaged in a fraud by using
customer assets for Sentinel's own benefit, and hiding its fraud through misstated financial
statements and false reports to regulators.  In particular, the Trustee claims Sentinel carried out a
hidden scheme of risky leveraging to increase its returns without pledging Sentinel equity, used
securities from customer-segregated accounts to secure and pay off Sentinel's loan from BONY,
and disguised from customers the extent of leveraging in order to continue drawing management

fees. Compl. ¶¶ 3, 70. The Trustee alleges that Sentinel avoided regulatory scrutiny through false reports to regulators about the segregation of customer funds and the net capital in Sentinel's possession. *Id.* ¶ 3(c) ("M&P knew or should have known that Sentinel engaged in *systematic violations* of the CFTC and Securities and Exchange Commission ('SEC') segregation requirements." (emphasis added)). Sentinel manipulated unaudited customer statements to hide the true risks and value of the portfolio. SMG Compl. ¶ 74. Sentinel allegedly used this scheme (i) to increase its returns without committing additional capital and (ii) to continue to attract customer investments and the associated management fees that it would not have been able to attract otherwise. Compl. ¶¶ 4, 38.

The leveraging allegedly was achieved through a strategy started in 2003, when Sentinel began purchasing a large volume of securities through repurchase agreements ("repo transactions"). *Id.* ¶ 38. In these repo transactions, Sentinel would sell securities to a third party with a promise to repurchase them at a set time and price. *Id.* ¶ 37. Sentinel would deliver the securities to a counterparty, which would in turn deliver a percentage (often roughly 90 percent) of the value to Sentinel. *Id.* ¶¶ 37–38. For each transaction, Sentinel would take a "haircut" in the amount of the difference between the value of the securities pledged by Sentinel and the cash received from the repo lender. *Id.* ¶ 38. The Complaint alleges that Sentinel would use the BONY loan to cover the haircuts from the repo transactions. *Id.* ¶ 39. Through these arrangements, according to the Complaint, Sentinel obtained control over $2 billion in securities without putting at risk any of its own equity. *Id.* ¶ 38.

Central to the Complaint is the allegation that because Sentinel did not have sufficient capital itself to secure the loan from BONY, Sentinel used customer assets that were required to be safely segregated. *Id.* ¶ 40. The Complaint alleges that Sentinel failed to properly

segregate customer assets, instead using those assets as collateral on Sentinel's BONY loan. *Id.* ¶ 101. Not only did Sentinel use customer funds to collateralize its loan with the bank, but Sentinel also used proceeds from the sale of customer securities to pay down Sentinel's loans, according to the allegations. BONY Compl. ¶ 66.

The Complaint alleges that Sentinel hid this leveraging scheme from customers, failing to disclose to them that customer securities were being used to collateralize the BONY loan, which in return was used to finance repo haircuts. Compl. ¶ 41. Had customers known of the risky leveraging, the Trustee alleges, they would have withdrawn their funds, thereby cutting off Sentinel's source of management income. *Id.* ¶ 4.

**E.     Sentinel Had Little Capital To Lose.**

According to the Complaint, Sentinel was "a thinly-capitalized FCM," and by the time of the McGladrey audit, it had a "massive net capital deficiency." Compl. ¶¶ 33, 3(e), 141. Although Sentinel obtained control over $2 billion in securities using customer funds, it did so "with none of its own equity," according to the Trustee. *Id.* ¶ 38. The Trustee claims that customer securities, not Sentinel assets, collateralized the loan-financed repo transactions and associated haircuts. *Id.* ¶ 41. When Sentinel collapsed, the Trustee alleges, it was unable to return customer funds because of its "undercapitalization," resulting in significant losses to Sentinel customers. *Id.* ¶¶ 171, 150 ("Given Sentinel's thin capital, even the slightest market fluctuations would mean that Sentinel had no means of meeting the liabilities it incurred.").

**F.     McGladrey's Audit Report.**

McGladrey performed only one audit for Sentinel, and that was of the 2006 year-end financial statements. Compl. ¶¶ 1, 2.[4] The audit was performed pursuant to the engagement letter signed by Sentinel management. *Id*. ¶¶ 50–53. The engagement letter delineates, as between McGladrey and Sentinel, responsibility for the financial statements. According to the engagement letter, which is incompletely quoted in the Complaint, *Sentinel management,* not the auditors, were responsible for:

- "identifying and ensuring that [Sentinel] complies with laws and regulations applicable to its activities;"

- "establishing and maintaining internal controls and the specific policies and procedures required by Regulation 1.16(d);"

- "the financial statements, including adjusting the financial statements to correct material misstatements;"

- "establishing and maintaining effective internal control over financial reporting and for informing [McGladrey] of all significant deficiencies and material weaknesses in the design or operation of such controls of which it has knowledge;" and

- "informing [McGladrey] of its views about the risks of fraud within the entity, and its knowledge of any fraud or suspected fraud affecting the entity."

Ex. 4, Engagement Letter at 2. McGladrey agreed to perform an audit of the year-end financial statements, though McGladrey advised Sentinel that an "audit is not designed to provide assurance on internal control or to identify significant deficiencies or material weaknesses." *Id.* at 1.

**G.     The Claims Pleaded Against Defendants.**

The Complaint alleges that McGladrey (and Johnson) wronged Sentinel by failing to properly report Sentinel's own violations of federal law, knowing misstatements of its own

---

[4]     Prior audits were performed by some of the same personnel, who worked for a different audit firm at the time, Altschuler, Melvoin & Glasser ("AM&G"). AM&G is not a defendant in this action.

books, Sentinel's own leveraging scheme, and Sentinel's own internal control policies and procedures. Specifically, McGladrey allegedly "knew or should have known" that Sentinel had engaged in knowing "systematic violations of the CFTC and Securities and Exchange Commission ('SEC') segregation requirements." Compl. ¶ 3(c). McGladrey allegedly improperly certified "false Sentinel financial statements," *id.*, and Sentinel allegedly misstated its "pledging of securities for the BONY loan," "Sentinel's compliance with its net capital requirements," "Sentinel's repo positions," and Sentinel's agreement with its parent company. *Id.* ¶ 70.

The Complaint seeks to hold McGladrey and Johnson liable to Sentinel for negligently failing to disclose Sentinel's "commingling and other misuse of customer funds," "Sentinel's net capital deficiency," "the risks associated with Sentinel's repo activity," "Sentinel's violations of CFTC and SEC regulations," Sentinel's misstatements in "Sentinel's financial statements," and the true relationship between Sentinel and its parent company. *Id.* ¶ 175. Likewise, McGladrey and Johnson are purportedly liable because Sentinel engaged in a "risky leveraged trading strategy and commingled and misused client funds," provided false reports to regulators, and borrowed in excess of its ability to repay. *Id.* ¶¶ 180–81. The Complaint does not allege that Sentinel's management was unaware of the company's actions.

## ARGUMENT

I.    **THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF *IN PARI DELICTO*.**

Under Illinois law, the doctrine of *in pari delicto* bars a claim by or on behalf of a company that perpetrated a fraud brought against auditors who allegedly participated in the company's fraud or failed to discover or report the fraud. *See Cenco v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir. 1982) ("[A] participant in a fraud cannot also be a victim entitled to

recover damages."); *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155, 1173 (Ill. App. Ct. 2005) ("The doctrine of *in pari delicto* embodies the principle that 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" (quotation marks omitted)); *see also Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230, 233 (7th Cir. 2003). The Complaint here alleges that Sentinel orchestrated a fraud, and it asserts claims against McGladrey and Johnson for failing to report that alleged fraud to Sentinel and its regulators. These claims are barred under the doctrine of *in pari delicto*.

A. **Dismissal Is Appropriate Where Pleaded Facts Establish the Defense of *In Pari Delicto*.**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal where allegations themselves establish an affirmative defense, as they do here. *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (Dismissal is warranted "where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense"); *Cortina v. Hotel & Rest. Employees Union*, No. 06-CV-6850, 2008 WL 857165, at *4 (N.D. Ill. Mar. 31, 2008) ("[D]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate where the plaintiff pleads himself or herself out [of] court by 'admit[ting] all the ingredients of an impenetrable defense.'" (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)). Specifically, courts routinely grant dismissal when the pleaded facts establish the defense of *in pari delicto*. *See, e.g., Knauer*, 348 F.3d at 238 (affirming dismissal based on *in pari delicto*); *Baena v. KPMG LLP*, 453 F.3d 1, 8 (1st Cir. 2006) (same); *Nisselson v. Lernout*, 469 F.3d 143, 158 (1st Cir. 2006) (same), *cert. denied*, 127 S. Ct. 2131 (2007); *Terlecky v. Hurd (In re Dublin Sec., Inc.)*, 133 F.3d 377, 380 (6th Cir. 1997) (same); *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp. I)*, 353 B.R. 324, 369 (Bankr. D.D.C. 2006) (same).

**B.     The Pleaded Facts Establish that Sentinel Directly Participated in the Wrongdoing.**

The doctrine of *in pari delicto* bars the Trustee's claims because Sentinel, through its management, directly participated in the alleged wrongdoing, and the Trustee stands in Sentinel's shoes for purposes of this lawsuit.

**1.     The Bankruptcy Trustee Stands in the Shoes of Sentinel.**

The Trustee stands in Sentinel's shoes for all claims and defenses, including *in pari delicto*, that might have been asserted against Sentinel. *See In re Chi., Rock Island & Pac. R.R.*, 860 F.2d 267, 272 n.5 (7th Cir. 1988) ("The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims *and defenses* which might have been asserted against the bankrupt but for the filing of the petition." quoting *Schokbeton Indus., Inc. v. Schokbeton Prods. Corp.*, 466 F.2d 171, 175 n.7 (5th Cir. 1972) (emphasis added) (quoting *Bank of Marin v. England*, 385 U.S. 99, 101 (1966)); *see also Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1281, 1284–85 (10th Cir. 1996) (bankruptcy trustee is subject to same defenses that could have been asserted had action been instituted by the debtor); *Claybrook v. Broad & Cassel, P.A. (In re Scott Acquisition Corp.)*, 364 B.R. 562, 570 (Bankr. D. Del. 2007) ("[I]f a claim by a debtor is barred by an *in pari delicto* defense, that same claim brought by a trustee is similarly barred. Every circuit court that has addressed this issue has come to the same conclusion."). Because all claims in the Complaint are brought by the Trustee in his capacity as Sentinel's bankruptcy trustee, those claims are subject to the defense of *in pari delicto*.

**2.     Sentinel Directed and Implemented the Fraud.**

The Trustee's claims should be dismissed because Sentinel, through its top management, allegedly masterminded and executed the fraud. The doctrine of *in pari delicto*

- 9 -

dictates that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *King*, 828 N.E.2d at 1173; *see also Cenco*, 686 F.2d at 454 ("[A] participant in a fraud cannot also be a victim entitled to recover damages[.]" (quotation marks omitted)); *Knauer*, 348 F.3d at 237 (affirming dismissal based on *in pari delicto* where the entities on whose behalf claims were asserted "were very much at the forefront" of the fraud).

In this case, the Complaint plainly establishes that Sentinel, through its senior-most officers and directors (namely, the Blooms and Mosley), engaged in a fraudulent scheme to use customer assets for Sentinel's own benefit. For example, the Trustee alleges that Sentinel increased its returns on investments by pledging the accounts of its unwitting customers as collateral for unusually large bank loans. Compl. ¶¶ 3, 70. Using repo transactions financed by its loan from BONY allegedly allowed Sentinel to gain control of more than $2 billion in securities without using any of the company's own capital. *Id.* ¶¶ 37–39. The Complaint alleges that Sentinel used customer assets to collateralize its own debt obligation to BONY, in violation of federal regulations that require such assets to be safely segregated from company funds. *Id.* ¶¶ 40, 101. Sentinel also allegedly used proceeds from customer investments to pay down Sentinel's debt. BONY Compl. ¶ 66. Sentinel evaded scrutiny, the Complaint alleges, by issuing false reports to regulatory bodies, misstating the amount of its net capital, and concealing the company's illegal segregation of customer accounts. Compl. ¶¶ 41, 70. Along the way, Sentinel purportedly knowingly engaged in "blatant violations of federal law" and issued materially false financial statements. *Id.* ¶ 3.

Because the Trustee specifically attributes the alleged misconduct to Sentinel's management,[5] the conduct must be imputed to Sentinel itself. *See United States v. One Parcel of*

---

[5]        *See, e.g.*, SMG Compl. ¶¶ 50–52, 57–60, 65–90.

*Land*, 965 F.2d 311, 316 (7th Cir. 1992) (Because a "corporation [always] acts . . . [and] 'knows' through its agents," courts presume that "[w]here a corporate agent obtains knowledge while acting in the scope of . . . agency, . . . the court imputes such knowledge to a corporation."); *United States v. LaGrou Distrib. Sys., Inc.*, 466 F.3d 585, 591–92 (7th Cir. 2006) (A corporation acts and knows through its agents.). Imputation is particularly appropriate where, as in this case, "the fraud permeates the top management of the company." *Cenco*, 686 F.2d at 454. In *Cenco*, company managers engaged in a "massive fraud" that "eventually spread to the [company's] top management." *Id.* at 451. Under new management, the company brought suit against its accounting firm for failure to either discover or report the fraud, and the accounting firm raised the defense of *in pari delicto*. The Seventh Circuit ruled in favor of the accounting firm, finding that a corporation cannot shift responsibility where "the uncontested facts show [the] fraud permeat[ed] the top management" of that corporation. *Id.* at 456.

The holding in *Cenco* is directly applicable to the present case. Here, the Trustee alleges that Sentinel's bad actors were Philip Bloom, Eric Bloom, and Charles Mosley. Philip Bloom was the company's founder, Chairman of the Board, and the owner of a significant percentage of Sentinel stock at all relevant times. *See* SMG Compl. ¶ 14. Eric Bloom, Philip Bloom's son, was Sentinel's President and CEO at all relevant times, and also owned and controlled a significant percentage of Sentinel stock. *See id.* ¶ 15. Not only was Eric Bloom "in charge of day-to-day management," he also "served as the Chief Compliance Officer for Sentinel." *Id.* Charles Mosley was Sentinel's Senior Vice President and head trader. According to the Trustee, he "was responsible for Sentinel's trading strategies and decisions, subject to supervision by Eric Bloom and Philip Bloom." *Id.* ¶ 16. The pleaded facts leave no doubt that the alleged wrongdoing was conducted by the officers and directors who controlled everything

- 11 -

from Sentinel's high-level decision-making down to its "day-to-day operations." *See, e.g.*, SMG

Compl. ¶¶ 57–58, 73–84 (Insiders controlled the detailed preparation of daily customer

statements); ¶¶ 50–52, 57–60, 65–72 (Insiders managed the funds and securities at the Bank of

New York); ¶¶ 85–90 (Insiders directed Sentinel's relationship with its parent company).

Clearly, the alleged wrongdoers were more than mere agents of Sentinel; they controlled Sentinel

in every material respect.

Because the fraud in which Sentinel was involved permeated top management,

those actions must be imputed to the company. *See Cenco*, 686 F.2d at 454; *Knauer*, 348 F.3d at

234 n.4 (*in pari delicto* applies where complaint indicates that the alleged wrongdoers controlled

the corporation); *FDIC v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992) (Where the persons

dominating and controlling the corporation orchestrated the fraudulent conduct, their knowledge

is imputed to the corporation.). The Trustee's allegations establish that Sentinel's top

management orchestrated the alleged misconduct, and therefore, there can be no dispute that

Sentinel "participated in [the alleged] wrongdoing." *King*, 828 N.E.2d at 1173 (quotation marks

omitted). Accordingly, the Complaint should be dismissed on the ground of *in pari delicto*.

### C.    The "Adverse Interest Exception" Is Inapplicable Under the Pleaded Facts.

The Complaint appears to try to circumvent the doctrine of *in pari delicto* by

squeezing its claims into the narrow parameters of the "adverse interest exception." But that

exception cannot apply to the alleged facts in this case because Sentinel benefited from the

alleged wrongdoing.

Pursuant to the adverse interest exception, the doctrine of *in pari delicto* does not

apply where the company's agents have "totally abandon[ed]" the company's interests "and [are]

acting entirely for [their] own or another's purposes." *Williams v. Cont'l Stock Transfer & Trust

Co.*, 1 F. Supp. 2d 836, 843 (N.D. Ill. 1998) (quoting *Center v. Hampton Affiliates, Inc.*, 488

- 12 -

N.E.2d 828, 830 (N.Y. 1985)). The exception is extremely narrow: it only adheres where the alleged fraud is *in no way beneficial* to the company. *See Schacht v. Brown*, 711 F.2d 1343, 1347–48 (7th Cir. 1983) (adverse interest exception does not apply unless the wrongdoing provided *no* benefit to the company); William M. Fletcher, 3 *Fletcher Cyclopedia of the Law of Private Corporations* § 821, at 112 (rev. vol. 2002) (A corporate officer's interest must be "entirely adverse to that of the corporation" for the adverse interest exception to apply.).

The Complaint's allegations unmistakably affirm that Sentinel benefited from the purported fraud. For example, the alleged fraud allowed Sentinel to, among other things: ( i) continue attracting clients and their capital investments, SMG Compl. ¶¶ 73–84; (ii) leverage those investments through "repo" transactions, *id.* ¶ 45; (iii) secure corporate loans, *id.* ¶¶ 49, 58; (iv) collateralize its own debt obligations, Compl. ¶¶ 40, 101; (v) pay down company loans, *id.* ¶ 66; (vi) generate interest income from government securities and corporate debt, SMG Compl. ¶¶ 56, 60; and (vii) apportion trading gains to the company's "house" account, *id.* ¶¶ 61–62, 70–71. Because the allegations themselves outline the many ways in which Sentinel benefited from the alleged fraud, the "adverse interest exception" does not apply and cannot save the Trustee's claims.

Moreover, *in pari delicto* still applies even if Sentinel's management acted to advance personal, rather than corporate, interests. That an agent's fraud may have secondarily, or even primarily, advanced personal interests does not prevent imputation. *See Cepa Consulting v. King Main Hurdman & Peat Marwick Main & Co. (In re Wedtech Sec. Litig.)*, 138 B.R. 5, 9 (S.D.N.Y. 1992) (knowledge is imputed to a company where an agent acts jointly in his own interests and that of the corporation, even when adverse personal interests are primary); *Mid-Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.*, 715 N.E.2d 906, 911

- 13 -

(Ind. Ct. App. 1999) ("[T]he adverse interest exception does not release a principal from liability when the agent acts both for himself and for the principal even if his primary interest is inimical to the principal"); *Askanase v. Fatjo*, 828 F. Supp. 465, 470–71 (S.D. Tex. 1993) (Knowledge is imputed to a company where agent acts jointly in his own interests and that of the corporation.). Whatever personal interests may have been advanced by Sentinel's agents in conducting the fraud, there can be no dispute that the company itself benefited.

Moreover, the Trustee's allegation that the fraud contributed to Sentinel's ultimate demise is irrelevant, as a matter of settled law, to the applicability of *in pari delicto*. Even conduct that brings only a short-term benefit is imputed to the corporation. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998) ("[F]raud or misbehavior [that] brings short-term gain to the corporation . . . is imputed to the corporation"); *Baena v. KPMG LLP*, 453 F.3d 1, 7 (1st Cir. 2006) ("[F]raud by top management to overstate earnings, and so facilitate stock sales or acquisitions," was a benefit to the company for purposes of applying *in pari delicto* even though "not in the long-term interest of the company."); *Nisselson v. Lernout*, 469 F.3d 143, 156 n.4 (1st Cir. 2006) ("Because the adverse interest exception turns on how the alleged wrongdoing affected the immediate interests of the party who seeks its shelter, [a company's] subsequent implosion is of no moment."); *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. Dist. Ct. App. 1992) (Notwithstanding corporation's "ultimate financial demise," corporation was responsible for agent's misrepresentation that allowed it to continue in business; *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp. I)*, 353 B.R. 324, 368 (Bankr. D.D.C. 2006) (questionable loans "provided a short-term benefit that the debtors (and their shareholders and their creditors) eagerly accepted," although they "may have injured the debtors in the long run.").

The Complaint plainly alleges that Sentinel participated in and benefited from the alleged fraud. Therefore, the Trustee's claims are barred under the doctrine of *in pari delicto*, and the Complaint should be dismissed with prejudice.

## II.    PLAINTIFF'S NEGLIGENCE/MALPRACTICE CLAIM SHOULD BE DISMISSED FOR LACK OF CAUSATION.

The Trustee's negligence/malpractice claim—which should be dismissed on the ground of *in pari delicto*—should also be dismissed for failure to plead loss causation.[6] Here, the Complaint alleges damages arising out of McGladrey's failure to report Sentinel's own fraud. As a matter of law, the Complaint fails to state a claim because the Trustee cannot allege reliance by Sentinel on McGladrey's report to uncover Sentinel's own fraud.

In the Seventh Circuit, finding accountants liable for not reporting to a company its own financial condition is "rare because it is unusual for the audited firm to be able to make a plausible contention that it could not have been expected to recognize its financial peril on its own even though it supplied the financial information on which the audit was based." *Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 910 (7th Cir. 2007). That is precisely Plaintiff's failing in this case: The Complaint does not—because it cannot—allege reliance by Sentinel on McGladrey's alleged negligence. *See FDIC v. Ernst & Young*, 967 F.2d at 170 (If plaintiff does not rely on an audit, it cannot be a substantial factor in causing an injury.); *Craig v. Metro Bank of Dallas*, 601 S.W.2d 734, 736 (Tex. Civ. App. 1980) (holding that without reliance, audit could

---

[6]    To sustain a negligence/malpractice claim under Illinois law, a plaintiff must set forth sufficient facts to satisfy each of four elements: (1) a duty, (2) breach of duty, (3) proximate cause, and (4) injury to plaintiff. *See Bishop v. Baz*, 575 N.E.2d 947, 952 (Ill. App. Ct. 1991); *Borowski v. Von Solbrig*, 303 N.E.2d 146, 150 (Ill. App. Ct. 1973) (noting that the elements of a negligence claim are the same for all professional malpractice/negligence actions), *aff'd*, 238 N.E.2d 301 (Ill. App. Ct. 1995); *see also Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006) ("In Illinois, the plaintiff must set forth sufficient facts to satisfy each element of a claim.").

not have been a "substantial factor in bringing about the loss"); *Askanase v. Fatjo*, No. Civ. A. H-91-3140, 1996 WL 33373364, at *27–28 (S.D. Tex. Apr. 1, 1996) (An audit is "not a substantial factor or a proximate cause in bringing about any injury" where the plaintiffs did not rely on the audit.).

The Trustee alleges that McGladrey breached its duty to Sentinel by failing to recognize and report the company's own misconduct. Compl. ¶ 175. But none of the allegations of the Complaint suggest a causal connection between McGladrey's alleged negligence and Sentinel's alleged damages. The pleaded facts clearly establish that Sentinel did not rely on its auditors to root out its own misconduct. There is no doubt that Sentinel—acting through its management, whom the Complaint alleges orchestrated the fraud McGladrey failed to uncover—knew about its own allegedly fraudulent financial and regulatory reports. The Trustee alleges that Sentinel's senior management—its founder and Chairman of the Board, its Chief Executive Officer and Chief Compliance Officer, and its Senior Vice President and Head Trader—were not only fully aware of the company's financial peril, they were its architects. *See, e.g.*, SMG Compl. ¶¶ 50–52, 57–60, 65–90. Accordingly, the Complaint does not allege facts indicating that McGladrey's negligence was the proximate cause of Sentinel's alleged injury. *See PNC Bank, Ky., Inc. v. Hous. Mortg. Corp.*, 899 F. Supp. 1399, 1405–06 (W.D. Pa. 1994) (finding that where the alleged wrongdoers "dominated the corporation's operations . . . it is clear that [the plaintiff] did not rely upon the [defendant's audits] in any manner in shaping its conduct"); *FDIC v. Deloitte & Touche*, 834 F. Supp. 1129, 1137 (E.D. Ark. 1992) ("[A]s a matter of law and logic," an auditor's negligence cannot be the proximate cause of an injury where a company already knows the information the auditor fails to provide.). In no sense can McGladrey be said

to have caused injury by failing to inform Sentinel of Sentinel's own fraud. And because there is no reliance, there can be no causation. Accordingly, the negligence claim should be dismissed.

## III.    THE COURT SHOULD STRIKE THE DAMAGES DEMAND.

This Court should also strike[7] the facially deficient $550,000,000 prayer for damages included in the Complaint. In a recent opinion, Judge Posner (writing for a panel including Easterbrook, C.J., and Wood, J.) admonished that bankruptcy trustees should not bring outsized damages claims unsupported by facts. *See Maxwell v. KPMG LLP*, 520 F.3d 713 (7th Cir. 2008). "We are particularly disturbed by the damages claim. It is not only groundless, as we have seen; it is intimidating, because of its size." *Id.* at 718. The Seventh Circuit directed that because a "trustee of a defunct business has little to do besides filing claims that if resisted he may decide to sue to enforce," district judges must "be vigilant in policing the litigation judgment exercised by trustees in bankruptcy, and in an appropriate case must give consideration to imposing sanctions for the filing of a frivolous suit." *Id.*

By the Trustee's own pleading it is apparent that Sentinel has not lost the $550,000,000 that form the damages claim. The Complaint stresses that Sentinel was "a thinly-capitalized FCM," with a "massive net capital deficiency." Compl. ¶¶ 33; 3(e), 141. The Sentinel leveraging scheme was accomplished "with none of [Sentinel's] own equity," according to the Trustee. *Id.* ¶ 38. When Sentinel collapsed it was unable to return customer funds because of its "undercapitalization," resulting in significant losses to Sentinel *customers*. *Id.* ¶¶

---

[7] Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike a damage claim from the pleadings. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). It is well-settled that "[e]ven though a request for damages may not be redundant, immaterial, impertinent, or scandalous, a motion to strike may be appropriate in cases where the requested relief is clearly unavailable as a matter of law." *See, e.g., Risetime, Inc. v. Colo. CustomWare, Inc.*, No. 03 C 4457, 2003 WL 22478762, at *3 (N.D. Ill. Oct. 31, 2003).

171, 150 ("Given Sentinel's thin capital, even the slightest market fluctuations would mean that Sentinel had no means of meeting the liabilities it incurred."); 3e ("[A]ll of Sentinel's leveraging activity depended on the pledging of customer securities for its bank loan. This leveraging activity was a substantial factor in Sentinel's demise.").

Where, then, does the $550,000,000 damages claim originate? Unquestionably, the Complaint is seeking damages for the losses sustained by Sentinel's customers. But it is well settled that the Trustee does not have standing to seek damages suffered by these creditors personally. *See Indemnified Capital Invs. SA v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406 (7th Cir. 1993) (company lacked standing to sue for losses suffered by company's customer accounts as opposed to house accounts);[8] *Federalpha Steel LLC Creditors' Trust v. Fed. Pipe & Steel Corp.*, 368 B.R. 679, 689 (N.D. Ill. 2006) ("The Trust may not bring personal claims of creditors, which are claims that a particular creditor has been harmed and in which no other claimant or creditor has an interest.") (quotation marks omitted). In order to succeed on the claims, the Trustee must prove that the corporation has been injured, "since otherwise it would not have a claim; and the trustee has no authority to enforce claims other than claims of the debtor, in this case the corporation." *Steinberg v. Buczynski*, 40 F.3d 890, 892 (7th Cir. 1994)

---

[8]    Specifically, the court held:

> ICI has not alleged in its complaint that it owned the funds in its customer accounts, that it was injured by the losses in those accounts, that it might suffer some future loss of business, or that its customers assigned their claims to ICI. Although ICI did mention that its customers may bring a suit against ICI, that assertion falls short of demonstrating a probabilistic injury and is too tenuous to create federal standing.

*Indemnified Capital Invs.*, 12 F.3d at 1409.

- 18 -

(Posner, J.) (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972)). This is because

> the trustee is confined to enforcing entitlements of the corporation. He has no right to enforce entitlements of a creditor. He represents the unsecured creditors of the corporation; and in that sense when he is suing on behalf of the corporation he is really suing on behalf of the creditors of the corporation. But there is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct—not derivative—claim against the third party, which only the creditor himself can enforce.

*Id.* at 893. In articulating the difference between a "personal" claim and "general" claim, Judge Posner explained that "[t]he point is simply that the trustee is confined to enforcing entitlements of the corporation. He has no right to enforce entitlements of a creditor." *Id.* There is no doubt here that the corporation, Sentinel, is not entitled to the losses of Sentinel's customers. Accordingly, these claims are personal, and the trustee is without standing to enforce them.

When the customers' losses are properly excluded from the Trustee's estimation, the $550,000,000 in damages is baseless. Indeed, the amount is *orders of magnitude* greater than the possible maximum amount of actual damages suffered by Sentinel, even taking all the Trustee's pleaded facts as true. Pleading groundless, vastly excessive damages is precisely the type of "intimidating" behavior that was admonished by the Court of Appeals and "invites consideration of the exercise of litigation judgment by a . . . trustee." *See Maxwell* 520 F.3d at 718. This $550,000,000 damages claim is unsupportable, and it should be stricken from the Complaint. *See id.* at 713.

## CONCLUSION

For all these reasons, the Complaint should be dismissed with prejudice.

Alternatively, the damages claim should be stricken from the Complaint.


Respectfully submitted,


Dated:  May 21, 2008                    MCGUIRE WOODS, LLP


By:     /s/ Michael M. Schmahl_____
        Richard J. Mason (ARDC #1787659)
        Patricia K. Smoots (ARDC #6194076)
        Michael M. Schmahl (ARDC #06275860)
        McGuireWoods LLP
        77 W. Wacker Drive, Suite 4400
        Chicago, Illinois  60601
        Tel:  312.849.8100

        and

        Steven M. Farina
        Thomas H. L. Selby
        WILLIAMS & CONNOLLY LLP
        725 12th Street, N.W.
        Washington, D.C.  20005
        Phone:  (202) 434-5526
        Facsimile: (202) 434-5029

# EXHIBIT 4

Page 1

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3

 4    In re:                    )
                                ) No. 07 B 14987
 5    SENTINEL MANAGEMENT GROUP, )
                                ) Chicago, Illinois
 6                              ) June 10, 2008
                    Debtor.     ) 10:00 a.m.
 7

 8        TRANSCRIPT OF PROCEEDINGS BEFORE THE
             HONORABLE JOHN H. SQUIRES

 9

10    APPEARANCES:

11    MR. BRIAN HERMANN
      MR. ARTHUR HAHN
12    on behalf of Discus Master, Limited;

13    MR. PAUL CARUSO
      on behalf of Lehman Brothers, Inc.;

14

15    MR. CHRIS GAIR
      MR. VINCE LAZAR
      on behalf of the trustee;
16

17    MR. JOHN SIEGER
      on behalf of Jump Trading, CF/Clutterbuck, Old
      Mutual, Preferred Investments, and SMW;
18

19    MR. MARK BERKOFF
      MR. SUSHELL KIRPALANI
      on behalf of the official committee;
20

21    MR. FREDERICK GREDE
      trustee of Sentinel Management Group;

22    MR. SEAN SCOTT
      MR. BRIAN TRUST
23    MR. MATTHEW INGBER
      on behalf of the Bank of New York;

24

25    MR. DAVID GENELLY
      on behalf of Kotke Associates;
```

cab9fe61-8fff-4bd6-bc8d-adb2d964ae27

1   and then the very next day transfers it back.   Mr.

2   Gair is referring to testimony from a Theresa Arana.

3   That's nowhere in the complaint.   The bottom line is

4   that we have a transfer from one account to another

5   account, and a transfer back the next day.

6              It's inappropriate to stand up in

7   open court, based on the allegations in this

8   complaint, based on any of the review of the

9   documents that the trustee has conducted, and to

10  call a bank employee a thief and to accuse him of

11  stealing when, in fact, and as the trustee alleges,

12  those monies were transferred and were transferred

13  back.   It's inappropriate, and I hope in the future

14  Mr. Gair will be a little more selective with his

15  words.

16              I have nothing further, Your Honor,

17  but I'm happy to answer any questions that you have.

18              THE COURT:   Thank you, counsel.

19              MR. INGBER:   Okay.

20              THE COURT:   I have no questions.

21              The bottom line is the motion to

22  dismiss is denied without prejudice.   I think under

23  the Supreme Court's Bell Atlantic versus Twombly,

24  127 Supreme Court 1955, 1964, there is sufficient

25  facts pleaded in this complaint to survive the

1    instant motion to dismiss.  And, again, refer you to

2    Judge Schmetterer's very learned opinion in this

3    court in the Irman case, I-r-m-a-n, 379 BR 299,

4    discussing at that point in time the 12 opinions

5    that the Seventh Circuit had authored interpreting

6    and applying Twombly since then.

7              I think the complaint alleges enough

8    factual detail to illuminate the nature of the claim

9    to allow the defendants to respond.  The gravamen of

10   the first seven counts of the complaint are

11   basically, as I've indicated earlier, core

12   proceedings on which the court has authority to

3    enter final judgment since they all basically arise

14   under various provisions of the Bankruptcy Code.

15             The eighth count is noncore related,

16   but it does seek to augment the bankruptcy estate

17   with additional damages thereunder on -- and this

18   court can only on the eighth count render proposed

19   findings and conclusions.  But under the extant case

20   law, I think there is sufficient here to withstand

21   the motion to dismiss.

22             The underlying gravamen of all

23   counts of the complaint is not principally based on

24   the two statutes argued by counsel for the Bank of

25   New York.  They're incidental to and only a part

Page 53

1    thereof, and the proof is in the pudding.  So the

2    motion to dismiss is denied without prejudice.

3                   How much time does counsel for the

4    bank need to file their answer, affirmative

5    defenses, and any other pleadings?

6                   MR. INGBER:  Your Honor, we'd propose 45

7    days.

8                   THE COURT:  Any problem with that?

9                   MR. GAIR:  I do, Your Honor.  This

10   complaint has been pending, and they've known about

11   it for months.  I don't think that it should take 45

12   days to respond.  I think we should push this case

3    along as quickly as possible.

14                  I also would ask that the court

15   consider setting a status hearing so that we can set

16   a trial date.

17                  MR. INGBER:  Your Honor, the case is

18   moving forward.  We're still producing documents.

19   The trustee just produced documents to us.  We will

20   be moving forward with depositions over the summer.

21   This isn't going to slow anything down.  We do need

22   and we'd ask for 45 days to respond.

23                  THE COURT:  Okay.  Well, I'll give you

24   the benefit of the 45 days, just like I would to Mr.

25   Gair were he in your position.  But I'm also going