**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **FREDERICK J. GREDE**, as Chapter 11 | ) |
| Trustee for Sentinel Management Group, Inc., | ) |
| | ) Case No. 08 C 2205 |
| Plaintiff, | ) |
| v. | ) |
| | ) Honorable James B. Zagel |
| **MCGLADREY & PULLEN LLP** and **G.** | ) |
| **VICTOR JOHNSON,** | ) (On withdrawal of reference from the |
| | ) Hon. John H. Squires, Bankr. Adv. Pro. |
| Defendants. | ) No. 08-167) |

**TRUSTEE'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS AND STRIKE**

J. Kevin McCall (ARDC # 03125685)
Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
Jeffrey S. Eberhard (ARDC # 6276471)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL  60611
Phone: (312) 222-9350

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

ARGUMENT ......................................................................................................................5

   I.   THE *IN PARI DELICTO* DOCTRINE DOES NOT WARRANT DISMISSAL. ...............5

      A.  *IN PARI DELICTO* IS INAPPLICABLE HERE. ..........................................................5

      B.  THE REQUIREMENTS FOR APPLICATION OF *IN PARI DELICTO* ARE NOT SATISFIED. ....................................................................................................11

   II.  THE COMPLAINT PROPERLY ALLEGES PROXIMATE CAUSATION. .................16

   III. THERE ARE NO GROUNDS TO STRIKE THE DAMAGES DEMAND. ...................18

CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Al Seoud v. E.F. Hutton & Co.*,
  720 F. Supp. 671 (N.D. Ill. 1989) ...........................................................................18

*Allard v. Arthur Andersen & Co.*,
  924 F. Supp. 488 (S.D.N.Y. 1996)......................................................................13, 15

*Ash v. Georgia-Pac. Corp.*,
  957 F.2d 432 (7th Cir. 1992) ...............................................................................9, 13

*Baena v. KPMG LLP*,
  453 F.3d 1 (1st Cir. 2006)..........................................................................................14

*Baker O'Neal Holdings Inc. v. Ernst & Young LLP*,
  2004 WL 771230 (S.D. Ind. Mar. 24, 2004).............................................................9

*Beck v. Deloitte & Touche*,
  144 F.3d 732 (11th Cir. 1998) .............................................................................13, 17

*Bondi v. Grant Thornton Int'l*
  (*In re Parmalat Sec. Litig.*), 421 F. Supp. 2d 703 (S.D.N.Y. 2006).......................16

*Buckley v. Deloitte & Touche USA LLP*,
  2007 WL 1491403 (S.D.N.Y. May 22, 2007) ..........................................................14

*Cenco Inc. v. Seidman & Seidman*,
  686 F.2d 449 (7th Cir. 1982) ......................................................................... *passim*

*Diamond Mortgage Corp. v. Sugar*,
  913 F.2d 1233 (7th Cir. 1990) ...................................................................................11

*Edgewater Med. Ctr. v. Rogan*
  (*In re Edgewater Med. Ctr.*), 332 B.R. 166 (Bankr. N.D. Ill. 2005) .........................7

*FDIC v. Deloitte & Touche*,
  834 F. Supp. 1129 (E.D. Ark. 1992).........................................................................18

*FDIC v. Ernst & Young*,
  967 F.2d 166 (5th Cir. 1992) .....................................................................................18

*FDIC v. O'Melveny & Myers*,
  61 F.3d 17 (9th Cir. 1995) ...........................................................................................8

*Fehribach v. Ernst & Young LLP*,
    493 F.3d 905 (7th Cir. 2007) ............................................................18

*Fisher v. Apostolou*,
    155 F.3d 876 (7th Cir. 1998) ..................................................2, 7, 8, 20

*Gordon v. Basroon*
    (*In re Plaza Mortgage & Fin. Corp.*), 187 B.R. 37 (Bankr. N.D. Ga. 1995) ...................19, 20

*Holland v. Alexander Grant & Co.*
    (*In re Am. Reserve Corp.*), 70 B.R. 729 (N.D. Ill. 1987)........................................13

*In re Chi., Rock Island & Pac. R.R.*,
    860 F.2d 267 (7th Cir. 1988) ...............................................................9

*In re Sec. Investor Prot. Corp. v. R.D. Kushnir & Co.*,
    274 B.R. 768 (Bankr. N.D. Ill. 2002) .......................................17, 18, 20

*In re Sunpoint Sec., Inc.*,
    377 B.R. 513 (Bankr. E.D. Tex. 2007) ...............................14, 15, 18, 19

*Indemnified Capital Invs., SA v. R.J. O'Brien & Assocs.*,
    12 F.3d 1406 (7th Cir. 1993) ............................................................20

*Knauer v. Jonathon Roberts Financial Group, Inc.*,
    348 F.3d 230 (7th Cir. 2003) ...........................................................8, 9

*Koch v. Refining v. Farmers Union Central Exchange, Inc.*,
    831 F.2d 1339 (7th Cir. 1987) ..........................................................10

*Maxwell v. KPMG LLP*,
    520 F.3d 713 (7th Cir. 2008) ...........................................................19

*McNamara v. PFS*
    (*In re The Personal and Bus. Ins. Agency*), 334 F.3d 239 (3rd Cir. 2003)...............................8

*Nisselson v. Lernout*,
    469 F.3d 143 (1st Cir. 2006)............................................................14

*Palay v. United States*,
    349 F.3d 418 (7th Cir. 2003) ........................................................6, 16

*Risetime, Inc. v. Colo. CustomWare, Inc.*,
    2003 WL 22478762 (N.D. Ill. Oct. 31, 2003)....................................18

*Schacht v. Brown*,
    711 F.2d 1343 (7th Cir. 1983) ................................................ *passim*

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ..................................................................... *passim*

*Sender v. Buchanan*
    (*In re Hedged-Invs. Assocs.*), 84 F.3d 1281 (10th Cir. 1996)....................................9

*Southmark Corp. v. Cagan*,
    999 F.2d 216 (7th Cir. 1993) ............................................................................11

*Steinberg v. Buczynski*,
    40 F.3d 890 (7th Cir. 1994) ............................................................................20

*Terlecky v. Hurd*
    (*In re Dublin Sec., Inc.*), 133 F.3d 377 (6th Cir. 1997) ..........................................14

*Waslow v. Grant Thornton LLP*
    (*In re Jack Greenberg, Inc.*), 240 B.R. 486 (Bankr. E.D. Pa. 1999) ................................15, 19

**STATE CASES**

*Board of Trustees v. Coopers & Lybrand*,
    803 N.E.2d 460 (Ill. 2003)............................................................................15, 16

*Craig v. Metro Bank of Dallas*,
    601 S.W.2d 734 (Tex. Civ. App. 1980) ..............................................................18

*Holland v. Arthur Andersen & Co.*,
    469 N.E.2d 419 (Ill. App. Ct. 1984) .................................................................7, 15

*NCP Litig. Trust v. KPMG LLP*,
    901 A.2d 871 (N.J. 2006).............................................................................15

**STATUTES AND RULES**

11 U.S.C. § 541(a) ...............................................................................9, 10

215 ILCS 5/191.....................................................................................10

CFTC Rule 1.16, 17 C.F.R. § 1.16 ...................................................................2, 3, 17

## INTRODUCTION

McGladrey & Pullen, LLP and one of its partners G. Victor Johnson (collectively, "M&P" or "Defendants") committed egregious violations of their audit obligations by issuing unqualified audit opinions on financial statements they knew were false and by actively participating in certain Sentinel insiders' wrongdoing. Specifically, M&P created false accounting entries for Sentinel's books, prepared false footnotes to Sentinel's financial statements, and colluded with Sentinel insiders to create a fictitious consulting agreement. M&P then certified materially false financial statements that included the false information it helped to create. (Compl. ¶¶ 3-4.) Compounding those misdeeds, M&P failed to fulfill its professional and statutory obligations to disclose regulatory violations of which it was aware in its audit report and to report those matters to Sentinel's regulators. (Compl. ¶¶ 3-4.) The Trustee seeks to recover damages for that gross misconduct.

In its motion to dismiss, M&P ignores the allegations of active misconduct, pretends that the Complaint merely alleges that it failed to detect someone else's wrongdoing, and then based upon that skewed view asserts that it cannot be held liable because certain Sentinel insiders also were wrongdoers. (M&P at 1.) Thus, M&P contends that it cannot be held liable for failing to do the very thing it was engaged and required by law to do – audit compliance with regulatory requirements and report violations and wrongdoing to regulators – so long as it turned out that certain Sentinel insiders had in fact committed violations of those laws and regulations. Distilled to its essence, M&P's argument is that it cannot be held accountable for even the most egregious misconduct. But neither logic nor the law provides M&P with such immunity.

M&P's primary legal argument is that the Trustee's claims are barred under the *in pari delicto* doctrine. (M&P at 1.) But M&P ignores the binding Seventh Circuit precedent to the contrary. It is well-settled in this Circuit that *in pari delicto* does not apply to innocent

successors, like the Trustee, that seek to recover for the benefit of innocent creditors. In the main case on which M&P relies – *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982) – the Seventh Circuit held that the *in pari delicto* defense was properly considered by the jury only because the wrongdoers would share in the recovery. In a series of cases since *Cenco*, the Seventh Circuit has clarified that *in pari delicto* does not apply where, like here, the wrongdoers would <u>not</u> share in any recovery, *Schacht v. Brown*, 711 F.2d 1343 (7th Cir. 1983), and specifically that *in pari delicto* does not apply to innocent successors such as bankruptcy trustees. *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995); *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998). Remarkably, M&P fails to address either *Scholes* or *Fisher*.

In addition, most if not all of M&P's arguments, like whether the Sentinel insiders' conduct harmed or benefited the company and whether Defendants proximately caused Sentinel's losses, depend upon factual assertions that disregard the allegations of the Complaint and plainly cannot be decided on a motion to dismiss. Finally, M&P's alternative request to strike the Trustee's damages demand should be summarily denied.

## FACTUAL BACKGROUND

Sentinel was registered as a futures commission merchant ("FCM") with the CFTC and as an investment adviser with the SEC. Sentinel was subject to regulations under both the Commodity Exchange Act ("CEA") and Investment Advisers Act of 1940 ("IAA") that required it to segregate assets for its customers. Both the CEA and IAA prohibited the pledging of customer assets for the benefit of others. In addition, under CFTC regulations, Sentinel was required to maintain adequate net capital to meet its liabilities. (Compl. ¶¶ 14-26.)

M&P was engaged to audit Sentinel's financial statements and perform "tests of compliance with [the] practices and procedures" set forth in CFTC Rule 1.16. (Compl. ¶ 50.) Rule 1.16 expressly required M&P to test Sentinel's practices for safeguarding customer assets

and maintaining sufficient net capital in accordance with the CEA and CFTC regulations. Rule 1.16 also required M&P to report any conditions relating to those practices that could inhibit Sentinel from discharging its responsibilities to customers, result in material financial loss, or result in violations of CFTC segregation requirements. (Compl. ¶ 56.) M&P was required under Rule 1.16 to report any such conditions to Sentinel, and if Sentinel failed to report them to the CFTC and NFA within three days, then M&P was required to directly notify the CFTC and NFA of the regulatory violations. (Compl. ¶ 67.) M&P was also obligated to "communicate" any "illegal acts" of which it was aware. (Compl. ¶ 52.) M&P dramatically failed to satisfy its audit obligations.

M&P took affirmative steps that ensured that regulatory violations were concealed and certified[1] financial statements that it knew were false and misleading. For example, M&P reviewed bank records showing where each Sentinel security was held and cross-referenced them to internal Sentinel records. By doing so, M&P had smoking gun evidence that hundreds of millions of dollars in securities that should have been segregated for customers were held in a non-segregated collateral account and had in fact been pledged to secure a loan from The Bank of New York ("BONY") to Sentinel. (Compl. ¶¶ 80-86.)

M&P also knew that Sentinel controlled approximately $2.4 billion worth of securities on a highly-leveraged basis using repurchase agreements ("repos"), $155 million of which purportedly were "House" repo positions (Compl. ¶ 143). M&P knew that the facts concerning the pledging of customer securities for the BONY loan and Sentinel's repo positions were not accurately reflected on Sentinel's financial statements. (Compl. ¶¶ 87-92, 144.) However, rather

---

[1] The Complaint defines "certified" as "expressed an unqualified opinion that Sentinel's financial statements stated fairly in all material respects the financial condition of Sentinel." (¶ 2.) Reference in this brief to "certified" has the same meaning.

than assuring that Sentinel's financial statements were accurate and reporting the massive segregation violations and improper pledging of customer assets, M&P instead prepared false footnotes to Sentinel's financial statements. (Compl. ¶¶ 3, 87-92, 107-110.) The footnotes that M&P prepared falsely stated that hundreds of millions of dollars in securities were segregated for customers when they were not. Those footnotes further falsely described the purpose of the BONY loan and concealed the extent of the leverage that put Sentinel's business (and its ability to satisfy obligations to customers and creditors) at risk. (Compl. ¶¶ 3, 111-16, 142-55.)

In addition to its misconduct with respect to the actual preparation of Sentinel's financial statements, M&P prepared a false audit report that it knew would be filed with the CFTC. M&P certified in its report that the information required to be disclosed to regulators pursuant to CFTC regulations, including whether Sentinel had sufficient net capital to meet all of its liabilities, was "fairly stated in all material respects . . . ." (Compl. ¶ 69.) M&P knew that statement was false given the information it acquired during its audit. (Compl. ¶¶ 3, 122-41.)

Finally, M&P disregarded what was one of the most important aspects of its audit engagement. Specifically, M&P failed to report to both Sentinel and its regulators the numerous violations of law and material inadequacies about which it was aware, in blatant disregard of its obligations under CFTC Rule 1.16. (Compl. ¶¶ 4, 156-60.)

The Sentinel insiders' misappropriation of securities to support their leveraged trading activity that M&P affirmatively concealed and failed to report directly led to Sentinel's demise. Mere months after M&P's deficient audit, Sentinel became unable to meet its redemption obligations to customers whose assets M&P falsely reported were segregated but instead had been used to collateralize the BONY loan used by the insiders to support their leveraged acquisition of high-risk securities. (Compl. ¶ 171.) Had M&P satisfied its audit responsibilities

and reported Sentinel's regulatory violations to regulators, Sentinel's loans would have been unwound and the higher-risk securities Sentinel controlled would have been liquidated, all of which could have been accomplished at the time M&P delivered its audit report and would have avoided the losses that Sentinel ultimately suffered.  (Compl. ¶¶ 4, 5, 172.)

## ARGUMENT

### I.    THE *IN PARI DELICTO* DOCTRINE DOES NOT WARRANT DISMISSAL.

According to M&P, *in pari delicto* bars a claim by a company against the company's auditors "who allegedly participated in the company's fraud or failed to discover or report the fraud."  (M&P at 7.)  That argument fails for several reasons.  First, because the Trustee is seeking to recover from Defendants for the benefit of innocent creditors, *in pari delicto* does not apply as a matter of law.  Second, even if generally available as a defense, the Court cannot decide that *in pari delicto* bars claims at the pleading stage.  Third, none of the Sentinel insiders' misconduct can be imputed to Sentinel because they were not acting on behalf of the company, and therefore *in pari delicto* does not apply.  Fourth, even if some or all of the Sentinel insiders' misconduct was on behalf of Sentinel, imputing their conduct to Sentinel is not warranted under the equitable considerations courts in the Seventh Circuit are required to apply.  Finally, even if some or all of the Sentinel insiders' misconduct could be imputed to Sentinel, none of it interfered with Defendants' audit, and therefore Count 1 cannot be dismissed.

### A.    *In Pari Delicto* Is Inapplicable Here.

The primary case on which M&P relies is *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982).  But application of *Cenco* and its progeny under Illinois law[2] actually supports denying, not granting, M&P's motion.  Notably, *Cenco* did not involve the dismissal of claims at the pleading stage but rather what defenses the defendant could raise at trial.

---

[2] Both parties agree that Illinois law applies pursuant to the audit engagement letter.  (M&P Ex. 4.)

In *Cenco*, Cenco sued its auditors for malpractice. *Id.* at 452. After a trial on the merits, the jury found for the auditors. *Id.* On appeal, the Court addressed whether the auditors were entitled to raise as a defense before the jury the fact that Cenco insiders had engaged in misconduct. Early in the opinion, the Seventh Circuit rejected the "extreme position" that would "exonerate auditors from all liability for failing to detect and prevent frauds by employees of the audited company." *Id.* at 454. "Auditors are not detectives hired to ferret out fraud, but if they chance on signs of fraud they may not avert their eyes – they must investigate." *Id.* The Court, in assessing the permissibility of raising an *in pari delicto* defense at trial, then considered the "underlying objectives of tort liability . . . to compensate the victims of wrongdoing and to deter future wrongdoing." *Id.* at 455. The Court noted that allowing Cenco to recover on the facts of that case "would be perverse" because "the corrupt officers themselves . . . would benefit pro rata from a judgment in favor of Cenco" because they were still stockholders. *Id.* Thus, the Court affirmed the jury verdict in favor of the auditors. *Id.* at 456. Unlike in *Cenco*, the Trustee here is liquidating assets for the benefit only of innocent creditors and not the wrongdoing Sentinel insiders. (*See* Bankr. Case No. 07-14987, Dkt. Entries 503, 577, 591.)[3]

Indeed, one year after *Cenco*, the Seventh Circuit held that *in pari delicto* does not apply where, like here, the wrongdoers would not share in any recovery by a liquidator. *Schacht v. Brown*, 711 F.2d 1343, 1348-49 (7th Cir. 1983). In *Schacht*, the statutory liquidator of Reserve Insurance Company brought suit against Reserve's auditors, alleging that they knew about the Reserve insiders' misconduct and Reserve's inability to meet all of its liabilities, but nevertheless issued unqualified audit reports. *Id.* at 1345. The auditors moved to dismiss under *Cenco*, but the Court held the liquidator's claims were not barred because innocent creditors, and not "the

---

[3] On a motion to dismiss, the Court is entitled to take judicial notice of matters in the public record. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

corrupt officers themselves," would benefit from any recovery from the auditors.  *Id.* at 1348.[4]
"[T]he *in pari delicto* defense exists only because wrongdoers must not be permitted to profit
from their wrongdoing."  *Edgewater Med. Ctr. v. Rogan* (*In re Edgewater Med. Ctr.*), 332 B.R.
166, 178 (Bankr. N.D. Ill. 2005).

Consistent with *Schacht*, the Seventh Circuit has since reinforced that *in pari delicto* does
not apply to claims brought by innocent successors, such as bankruptcy trustees.  In *Scholes v.
Lehmann*, 56 F.3d 750, 752-53 (7th Cir. 1995), the receiver for corporations owned by Ponzi
scheme principal Michael Douglas brought claims against third parties.  The Court held that the
receiver could maintain those claims despite Douglas's misconduct because the "appointment of
the receiver removed the wrongdoer from the scene.  The corporations were no more Douglas's
evil zombies.  Freed from his spell they became entitled [to recover from third parties] for the
benefit not of Douglas but of innocent investors . . . ."  *Id.* at 754.  The Court explicitly held that
*in pari delicto* does not apply to innocent successors suing third parties for the benefit of
innocent customers and creditors:  "[T]he defense of *in pari delicto* loses its sting when the
person who is *in pari delicto* is eliminated . . . .  Now that the corporations created and initially
controlled by Douglas are controlled by a receiver whose only object is to maximize the value of
the corporations for the benefit of their investors and any creditors, we cannot see an objection to
the receiver's bringing suit . . . ."  *Id.* at 754-55.

In *Scholes*, the Court specifically noted that an available alternative to the receiver
maintaining suit (albeit a less efficient alternative) would be "an adversary action, in bankruptcy,
brought by the trustee in bankruptcy of the corporations . . . ."  *Id.* at 755.  In *Fisher v.
Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998), the Court again confirmed that *in pari delicto* does

---

[4] The Illinois Court of Appeals has adopted *Schacht* as the law of Illinois.  *See Holland v. Arthur
Andersen & Co.*, 469 N.E.2d 419, 428 (Ill. App. Ct. 1984).

not apply to bankruptcy trustees suing wrongdoers for the benefit of all creditors. In *Fisher*, the district court had found that the debtor "was a party to the fraud, not its victim, and thus, under the *in pari delicto* doctrine, could not sue [third parties] (through the trustee)." *Id.* at 879. The Seventh Circuit reversed, concluding that "the trustee's *Scholes* argument is convincing on the inapplicability of the *in pari delicto* doctrine here . . . ." *Id.* at 880.[5] Therefore, the Seventh Circuit held that the trustee could maintain suit against third parties, regardless of whether the debtor or its insiders had been wrongdoers, because "now that the trustee is in control, he should be able to pursue claims against the other wrongdoers for the benefit of the entire class of creditors." *Id.* Since *Fisher*, not a single published decision from this Circuit applying Illinois law has barred claims brought by an innocent successor such as a receiver or trustee under the *in pari delicto* doctrine.[6]

M&P does not cite the relevant portions of *Cenco* and *Schacht* and does not cite *Scholes* or *Fisher* at all. Instead, M&P relies on *Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230, 237 (7th Cir. 2003), in which the Court, applying Indiana law, affirmed the dismissal of a complaint brought by a receiver because there were "no allegation whatsoever that the defendants were directly involved" in any of the misconduct at issue. Thus, *Knauer* really stands

---

[5] The Court in *Fisher* did state that *Scholes* did not answer the question of what claims creditors could bring against the same third parties directly, but that issue is not present here.

[6] Other courts have also held that *in pari delicto* does not apply to claims brought by innocent successors such as bankruptcy trustees. *See, e.g., McNamara v. PFS (In re The Personal and Bus. Ins. Agency)*, 334 F.3d 239, 246 (3rd Cir. 2003) ("[T]he Trustee comes to us with clean hands, representing the interests of innocent creditors. If the doctrine of imputation were applied to bar [] recovery, that application would lead to an inequitable result (loss to innocent creditors)."); *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995) ("While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law.").

for the unremarkable proposition that a defendant who did not engage in wrongdoing cannot be liable to a plaintiff that did.[7]

Even given the unique facts of *Knauer*, the Court noted that its ruling would not apply "[h]ad the broker dealers been directly involved in the embezzlements, or attained some tangible benefit from them."   348 F.3d at 236, 237 n.6; *Baker O'Neal Holdings Inc. v. Ernst & Young LLP*, 2004 WL 771230, at *9-10 (S.D. Ind. Mar. 24, 2004) (holding that *Scholes* and not *Knauer* controls where plaintiff alleges auditors breached audit obligations).  Consistent with *Knauer*, the Seventh Circuit, applying Illinois law, has rejected M&P's argument that *in pari delicto* applies to claims against a defendant that itself actively engaged in wrongdoing.  *Ash v. Georgia-Pac. Corp.*, 957 F.2d 432, 436 (7th Cir. 1992) (rejecting argument that "anyone who suborns the chief operating officer of a corporation has by virtue of that success purchased immunity from liability to the principal victim").

  M&P also cites to cases from other jurisdictions declining to extend *Scholes* to bankruptcy trustees.  *See, e.g., Sender v. Buchanan* (*In re Hedged-Invs. Assocs.*), 84 F.3d 1281, 1285 (10th Cir. 1996).  But *Sender* and the other cases carry no weight in this Circuit.  *Sender* and similar cases from certain other Circuits interpret Section 541(a) of the Bankruptcy Code, which provides that a bankruptcy trustee steps into the debtor's shoes "as of the commencement of the case," to mean that bankruptcy trustees should be treated more poorly than other innocent successors, and that claims brought by bankruptcy trustees should be subject to defenses that would have been applicable to the debtor as though still under corrupt management.  *Id.* However, the Seventh Circuit has already rejected those cases and the faulty logic they employ.

---

[7] M&P also cites *In re Chi., Rock Island & Pac. R.R.*, 860 F.2d 267, 272 n.5 (7th Cir. 1988), for the proposition that the "Trustee stands in Sentinel's shoes for all claims and defenses, including *in pari delicto*." (M&P at 9.)  But *Rock Island* merely held that a trustee is obligated to perform the debtor's executory contracts and had nothing to do with affirmative defenses, let alone *in pari delicto*.

*Scholes* and *Fisher* note that bankruptcy trustees are not subject to the *in pari delicto* defense. Further, the premise on which the defendants sought to apply *in pari delicto* in *Schacht* is identical to the basis Defendants use to assert the same defense against the Trustee – namely, that trustees (or liquidators or receivers) stand in the shoes of the defunct entity being liquidated. The Illinois statute governing insurance liquidators that was at issue in *Schacht*, like Section 541(a), provides that the receiver is vested "with the title to all property, contracts, and rights of action of the company as of the date of the order directing rehabilitation or liquidation." 215 ILCS 5/191; *Schacht*, 711 F.2d at 1347 n.3. Just as *in pari delicto* did not apply in *Schacht* notwithstanding the liquidator standing in the shoes of the corporation "as of the date of the order," the doctrine similarly does not apply here notwithstanding Section 541(a).

Under *Cenco* and *Schacht*, in determining whether *in pari delicto* applies, this Court must assess whether the wrongdoers would share in any recovery. That determination is controlled by the fact that the Trustee is only seeking to recover for the benefit of innocent creditors, and not by a hypothetical set of facts that might have existed before the commencement of the Debtor's bankruptcy case and the appointment of a liquidating trustee. The only correct conclusion under binding Seventh Circuit precedent is that because the guilty Sentinel insiders would not share in any recovery by the Trustee, who is innocent, *in pari delicto* does not apply.

This conclusion is supported not only by *Schacht*, *Scholes*, and *Fisher*, but by other Seventh Circuit authority analyzing Section 541 as well. In *Koch v. Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1342-46 (7th Cir. 1987), after conducting an analysis of Section 541, the Seventh Circuit concluded that bankruptcy trustees are not limited to claims the debtor-corporation could have asserted outside of bankruptcy. Rather, the "trustee represents not only the rights of the debtor but also the interests of creditors of the debtor." *Id.* at 1342. Thus,

as properly analyzed by the Seventh Circuit, Section 541 does not impose a potential *in pari delicto* limitation on a bankruptcy trustee's ability to sue guilty third parties that *Sender* and its progeny infer.  The Bankruptcy Code was never intended to create such inequitable results, but to protect innocent creditors.

      **B.**       **The Requirements For Application Of *In Pari Delicto* Are Not Satisfied.**

Even if it applied, *in pari delicto* cannot be the basis for dismissing the Trustee's claims, because not a single one of the four elements required for application of the defense is present. Thus, even if there were no blanket rule in this Circuit prohibiting application of *in pari delicto* to claims brought by bankruptcy trustees in these circumstances, there still is no reason to dismiss the Complaint.

*First*, whether *in pari delicto* applies involves highly fact-intensive inquiries that cannot be determined on the pleadings.  *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1248 n.14 (7th Cir. 1990) (reversing grant of motion to dismiss because "[i]t is premature, at this stage of the proceedings, to invoke" *in pari delicto*).  *Cenco* itself was decided after a trial on the merits, 686 F.2d at 452, and *Schacht*, 711 F.2d at 1348 stated that "proof at trial" was necessary to find that *in pari delicto* applied to bar claims (but not to hold that the defense did not apply).  Thus, it would be improper to dismiss the Complaint on *in pari delicto* grounds.

*Second*, as M&P recognizes, if the insiders' conduct harmed Sentinel, then it cannot be imputed to support application of *in pari delicto*.  The clearest examples of harmful conduct that cannot be imputed is when insiders steal from the company, *Cenco*, 686 F.2d at 454, or transfer assets for an "unauthorized purpose," *Scholes*, 56 F.3d at 754.  The Seventh Circuit has specifically held that an investment adviser's use of funds deposited by investors "to meet mutual short-term cash needs by defrauding . . . investors" is tantamount to "looting" that cannot be imputed.  *Southmark Corp. v. Cagan*, 999 F.2d 216, 220, 223 (7th Cir. 1993).

11

Here, the Complaint alleges that the insiders' and M&P's misconduct harmed Sentinel in precisely those ways.  (¶¶ 4, 152-55, 168-72, 176, 184.)  The Trustee's allegations are backed up with detailed factual averments of the insiders' transfer of assets for unauthorized purposes, namely, pledging them as collateral for the BONY loan and using them to finance repo positions for the benefit of the insiders (¶¶ 39-40, 77, 83-86, 144-48, 181), as well as numerous violations of segregation requirements (¶¶ 3-4, 43, 70, 78, 118-20, 156-60).

All of that misconduct was taken so that the insiders could continue to unlawfully benefit themselves by, among other things, paying themselves the proceeds of their ill-gotten gains. (Compl. ¶¶ 3f, 34, 166, 181; SMG Compl. ¶¶ 2-6, 59, 117-42.)  The Sentinel insiders' risky "three wheels over the cliff" leveraging activity using securities that were supposed to be segregated in order to acquire loans and large high-risk securities positions decimated Sentinel because it saddled Sentinel with enormous debt to BONY and repo counterparties that the insiders were only able to undertake and maintain because M&P failed to report the insiders' regulatory violations.  That activity, which was known to but unreported by M&P, dissipated assets that should have been segregated for customers, allowed BONY to assert liens over the highest-rated securities in Sentinel's portfolio, and left Sentinel holding highly-illiquid collateralized debt obligations.  (Compl. ¶¶ 134, 142-53, 168-72.)  Thus, the insiders' misconduct cannot be imputed because, like that of M&P, it harmed Sentinel.

M&P asks this Court to ignore those well-pleaded allegations and contends that the insiders' misconduct actually benefited Sentinel by allowing it to "continue to attract customer investments and the associated management fees that it would not have been able to attract otherwise."  (M&P at 4, 10.)  Those "facts" are not alleged in the Complaint (and certainly not in the paragraphs M&P cites), and M&P is not entitled to draw inferences in its favor.

Moreover, the Seventh Circuit has already rejected similar arguments that maintaining a company's "active corporate existence past the point of insolvency to the detriment of outside creditors" benefits the company.  *Schacht*, 711 F.2d at 1348.  Instead, the Court held "the prolonged artificial insolvency of Reserve benefited only Reserve's managers and the other alleged conspirators, not the corporation" and that "such a Pyrrhic 'benefit' to Reserve is [in]sufficient to" support application of *in pari delicto*.  *Id.*; *see also Holland v. Alexander Grant & Co.* (*In re Am. Reserve Corp.*), 70 B.R. 729, 734-35 (N.D. Ill. 1987) (same); *Allard v. Arthur Andersen & Co.*, 924 F. Supp. 488, 494 (S.D.N.Y. 1996) (rejecting argument that extension of credit benefited company where it "provide[d] an illusory financial cushion").  The rationale of *Schacht* applies where a company is allowed to continue business in violation of regulatory requirements.  *See Beck v. Deloitte & Touche*, 144 F.3d 732, 735-37 (11th Cir. 1998) (auditors' negligence concealed insiders' misconduct from regulators, "who would have taken timely action to prevent the failure of [debtor]").

The "benefit" posited by M&P would inure to the insiders, who would reap the management fees and be able to steal more money for their own benefit.  At best, any influx in capital would provide an "illusory" financial cushion because it would saddle Sentinel with more debt, which it could never repay with its own assets.  Thus, as in *Schacht*, *Holland*, *Allard*, and *Beck*, M&P's arguments should be rejected.[8]

*Third*, even if the Sentinel insiders' misconduct benefited Sentinel, it cannot be imputed to preclude claims unless M&P shows that the "underlying objectives of tort liability . . . to

---

[8] M&P also makes much of the degree of the insiders' control over Sentinel (M&P at 2-3), presumably to preserve an argument that even if their misconduct harmed Sentinel, then under the "sole actor" doctrine, it should still be imputed to Sentinel.  But the Complaint specifically alleges that there were innocent Sentinel officers "who were not part of the Sentinel Insiders' scheme."  (¶ 13.)  Moreover, the "sole actor" doctrine does not apply if M&P knew about the insiders' breaches of duties or otherwise engaged in wrongdoing, which the Complaint clearly alleges it did.  *See Ash*, 957 F.2d at 436 (only "innocent third parties" may invoke sole actor doctrine).

compensate the victims of wrongdoing and to deter future wrongdoing" weigh in favor of barring recovery. *Cenco*, 686 F.2d at 455; *Schacht*, 711 F.2d at 1348.

With respect to the compensation factor, the court in *Cenco*, 686 F.2d at 455, was concerned that shareholders who could benefit from the claims included both the corporate wrongdoers and shareholders who had already recovered in a direct action against the auditors. Here, neither concern is present. Only Sentinel's innocent customers and creditors, none of whom has sought damages from M&P, would benefit from a recovery by the Trustee, whereas the guilty Sentinel insiders would not. In contrast, M&P's cases barring claims on *in pari delicto* grounds are inapposite because the defense applied either because the wrongdoers themselves would benefit, *see Cenco*, 686 F.2d at 455; *Nisselson v. Lernout*, 469 F.3d 143, 158 (1st Cir. 2006) ("If we were to suspend the operation of the in pari delicto defense in this case, creditors with unclean hands would profit equally with innocents") or to prevent a double recovery. *See Baena v. KPMG LLP*, 453 F.3d 1, 9 (1st Cir. 2006) (claims barred where shareholders had already received substantial sums from defendants); *Terlecky v. Hurd* (*In re Dublin Sec., Inc.*), 133 F.3d 377, 380 (6th Cir. 1997) (applying *in pari delicto* where creditors had filed action "seeking compensation for the allegedly fraudulent activity in which the defendants engaged").

With respect to *Cenco*'s deterrence factor, courts have routinely held that because auditors often are specifically engaged to audit control weaknesses and procedures that might indicate wrongdoing by the company's insiders, it makes no sense to apply *in pari delicto* to claims against auditors. *See Buckley v. Deloitte & Touche USA LLP*, 2007 WL 1491403, at *8 (S.D.N.Y. May 22, 2007) ("[F]uture auditors and accountants may not be deterred from participating in fraudulent conduct if claims such as those presented in this complaint were not allowed to go forward beyond the pleading stage."); *In re Sunpoint Sec., Inc.*, 377 B.R. 513, 567

(Bankr. E.D. Tex. 2007) (rejecting *in pari delicto* defense based on insiders' "misappropriations of customer cash," because "[i]t would exonerate these auditors from all liability for their miserable failure to perform their audits according to the applicable standards of their profession"); *Waslow v. Grant Thornton LLP* (*In re Jack Greenberg, Inc.*), 240 B.R. 486, 514 (Bankr. E.D. Pa. 1999) ("[G]oal of deterring wrongdoing is best served by subjecting the auditors to potential liability, thereby encouraging greater diligence by them in such situations in the future."); *NCP Litig. Trust v. KPMG LLP*, 901 A.2d 871, 890 (N.J. 2006) (holding *in pari delicto* does not apply "when an auditor is negligent within the scope of its engagement"). Here, allowing M&P to escape liability for its egregious audit misconduct would not deter future wrongdoing, but instead would give auditors carte blanche to utterly disregard their obligations.[9]

*Fourth* and finally, to the extent the Sentinel insiders' misconduct is relevant at all, for any of it to bar or reduce recovery on Count 1 (negligence/malpractice), a jury must (1) determine that the conduct interfered with M&P's audit and, if so, (2) apportion the relative fault between the parties. *Bd. of Trustees v. Coopers & Lybrand*, 803 N.E.2d 460, 464-65 (Ill. 2003). Under Illinois' "audit interference doctrine," only contributory fault that caused M&P's "failure to perform [its] contract and to report the truth" can be used to bar or reduce the Trustee's recovery. *Id.* at 464-65; *Holland*, 469 N.E.2d at 427 (same);[10] *see also Allard*, 924 F. Supp. at 495, 498 (intentional conduct imputed to plaintiff subject to comparative fault principles). Whether and the extent to which the insiders' conduct "contributed to [M&P's] failure to identify and disclose violations . . . is a factual question for the jury to decide." *Bd. of Trustees*, 803

---

[9] Only where there are "large corporate shareholders capable of conducting an independent audit" will barring recovery against third parties deter wrongdoing. *Schacht,* 711 F.2d at 1349.

[10] *Cenco*'s holding that misconduct imputed to plaintiff bars any recovery on a negligence claim was decided before Illinois switched from a contributory to comparative negligence regime.

N.E.2d at 469.   The Complaint plainly alleges that Defendants knew about and consciously disregarded the insiders' misconduct, and that numerous documents reviewed by Defendants showed on their face the violations that M&P failed to report.   (¶¶ 2-3, 80-86, 92, 95-97.)   The Court must accept those allegations as true, and thus at this stage Defendants cannot sidestep the audit interference doctrine and comparative fault principles.

## II.    THE COMPLAINT PROPERLY ALLEGES PROXIMATE CAUSATION.

Defendants also contend that Count 1 (negligence/malpractice) should be dismissed for failure to properly plead proximate causation because "the Trustee cannot allege reliance by Sentinel on McGladrey's report" given that Sentinel "knew about its own allegedly fraudulent financial and regulatory reports."   (M&P at 15-16.)   Proximate causation is not amenable to disposition on a motion to dismiss.   *Palay v. United States*, 349 F.3d 418, 432-33 (7th Cir. 2003). And, in any event, Defendants' argument is without merit.

As an initial matter, this is merely a re-packaging of Defendants' meritless *in pari delicto* argument.   *See Bondi v. Grant Thornton Int'l* (*In re Parmalat Sec. Litig.*), 421 F. Supp. 2d 703, 715 (S.D.N.Y. 2006) (applying Illinois law and rejecting argument that claims against auditors should be dismissed "for lack of reliance because [plaintiff] participated in and was aware of the fraudulent transactions through the imputed knowledge of its agents" for the same reasons *in pari delicto* defense was rejected).   Thus, for the same reasons discussed in Section I. above, the insiders' conduct cannot be imputed, and Defendants' causation argument should be rejected.

Defendants also ignore the Trustee's allegations of causation.   The Trustee alleges that if "M&P had adequately performed its duties, it would not have certified Sentinel's 2006 financial statements, and it would have reported Sentinel's regulatory violations and control weaknesses to management and to the applicable regulatory agencies.   This would have resulted in either the regulators shutting down Sentinel, the withdrawal of money by Sentinel's customers, or Sentinel

otherwise adjusting its business practices and rectifying its deficiencies." (Compl. ¶ 4.) The resulting losses would have been avoided if M&P did not prepare false footnotes to Sentinel's financial statements or issue an unqualified audit opinion, or if it properly reported Sentinel's regulatory violations.

Defendants focus on one aspect of the Trustee's causation theory (their failure to properly disclose and report to <u>Sentinel</u>), but completely ignore the Trustee's allegations that under CFTC regulations, Defendants also owed a duty to report violations of law and material inadequacies directly to <u>Sentinel's regulators</u>. (Compl. ¶ 67.) Thus, the relevant issue is not whether certain insiders already "knew" about the misconduct, but what would have happened if those insiders or Sentinel were faced with the specter of having regulatory violations and financial misstatements and control weaknesses properly reflected in audit reports Sentinel filed with regulators or reported directly to regulators as required by Rule 1.16. Had M&P performed its duties, Sentinel's loans would have been unwound at the time M&P delivered its audit report, thus avoiding the losses to Sentinel and its creditors. (Compl. ¶ 4.)

Courts routinely uphold causation theories based on auditors' failure to report violations to regulators or management, even if some management already knew or should have known of the misconduct. *See, e.g., Schacht*, 711 F.2d at 1345 (had Department of Insurance known of corporation's activities, "it would not have permitted Reserve to continue to write insurance and suffer further dissipation of its assets"); *Beck*, 144 F.3d at 735 ("But for the negligence of Deloitte & Touche described herein, the Southeast Directors' efforts to mask their incompetence and misdeeds would have been revealed to Southeast's regulators and shareholders, who would have taken timely action to prevent the failure of Southeast."); *In re Sec. Investor Prot. Corp. v.*

*R.D. Kushnir & Co.*, 274 B.R. 768, 773-74 (Bankr. N.D. Ill. 2002) (auditors' failure to report unlawful trading activities).[11]

Here, M&P's active wrongdoing and failure to report regulatory violations it was legally and professionally obligated to report – not the insiders' leveraging scheme itself – is the conduct for which the Complaint seeks to hold M&P liable, and that misconduct directly led to Sentinel's losses.  (Compl. ¶¶ 43, 70, 120-23, 134, 150-55, 168.)  Sentinel's losses were a foreseeable result of Defendants' negligence, *Sunpoint*, 377 B.R. at 555 ("[T]he idea that fraud by a company's management is not reasonably foreseeable to an auditor is, of course, preposterous"), and therefore the Trustee has adequately alleged proximate causation.

## III.    THERE ARE NO GROUNDS TO STRIKE THE DAMAGES DEMAND.

In the alternative to dismissing the Complaint, Defendants move this Court to strike the Trustee's damages demand.  (M&P at 17.)  There is no legal basis for doing so.

Motions to strike are "disfavored."  *Al Seoud v. E.F. Hutton & Co.*, 720 F. Supp. 671, 686 (N.D. Ill. 1989).  Defendants have cited no cases striking damages demands, and the only case they do cite on this issue <u>denied</u> the motion to strike.  *See Risetime, Inc. v. Colo. CustomWare, Inc.*, 2003 WL 22478762, at *3 (N.D. Ill. Oct. 31, 2003).  There simply is no basis to strike the Trustee's damages demand – the Trustee is entitled to prove the amount of damages caused by Defendants, and Defendants can attack the Trustee's proof at trial.

---

[11] Defendants' authority is not even remotely on-point.  Defendants cite *FDIC v. Deloitte & Touche*, 834 F. Supp. 1129 (E.D. Ark. 1992), for the proposition that "'as a matter of law and logic,' an auditor's negligence cannot be the proximate cause of an injury where a company already knows the information the auditor fails to provide."  (M&P at 16.)  However, in *FDIC v. D&T*, the court <u>rejected</u> that very argument and <u>denied</u> the auditors' motion to dismiss.  *Craig v. Metro Bank of Dallas*, 601 S.W.2d 734 (Tex. Civ. App. 1980), has nothing to do with claims against auditors at all.  The cases M&P cites that find in favor of auditors – *Fehribach v. Ernst & Young LLP*, 493 F.3d 905 (7th Cir. 2007) and *FDIC v. Ernst & Young*, 967 F.2d 166 (5th Cir. 1992) – are easily distinguishable because they do not involve failures to report regulatory violations or other unlawful conduct.  In *Fehribach*, the Court, applying Indiana law, affirmed the grant of summary judgment in favor of auditors that did not breach any audit obligations and on statute of limitations grounds.

Because there is no legal basis supporting their motion to strike, Defendants instead dress up their request with rhetoric, citing a recent Seventh Circuit case, *Maxwell v. KPMG LLP*, 520 F.3d 713, 715-18 (7th Cir. 2008), in which the Seventh Circuit criticized a bankruptcy trustee for pursuing to judgment a suit that sought hundreds of millions of dollars <u>more</u> in damages than the estate owed to creditors from auditors whose alleged misconduct had an attenuated, if any, connection to the damages suffered by the debtor.  Here, in contrast, the Trustee is suing for losses directly resulting from M&P's own misconduct, including its preparation and certification of misleading financial statements and failure to report segregation and net capital violations and control weaknesses.  Moreover, here, the Trustee is seeking damages in the amount Sentinel actually was injured.

M&P also contends that the "Trustee's own pleading [makes it] apparent that Sentinel has not lost the $550,000,000 that form the damages claim."  (M&P at 17.)  According to M&P, the Trustee is impermissibly seeking to recover damages suffered by Sentinel's customers. (M&P at 18.)  Although it is true that as a result of its losses, Sentinel cannot pay its debts to creditors and customers who therefore are indirectly feeling the effect of Sentinel's losses, that "does not transform the action into a suit by the creditors." *Greenberg*, 240 B.R. at 506.  *Scholes* makes clear that a corporation is injured when used as an engine for insiders' wrongful conduct. 56 F.3d at 753-54.  The Trustee alleges that Sentinel suffered losses from the insiders' improper borrowing and pledging of securities when Sentinel became unable to meet its liabilities to creditors after M&P assisted in creating and improperly certified false financial statements and then failed to report regulatory violations of which it was aware.  (Compl. ¶¶ 4, 152.)  Those are injuries that were suffered by Sentinel.  *See Sunpoint*, 377 B.R. at 563 (insiders' misuse of customer assets injured company); *Gordon v. Basroon* (*In re Plaza Mortgage & Fin. Corp.*), 187

B.R. 37, 43 (Bankr. N.D. Ga. 1995) (misuse of customer deposits harmed company because company "incurred millions of dollars of liabilities to investors which it could not repay").

Because the Trustee is suing for Sentinel's losses, not its creditors', Defendants' reliance on *Steinberg v. Buczynski*, 40 F.3d 890, 892 (7th Cir. 1994), which held that a trustee cannot bring personal claims of creditors, is misplaced.[12]  Moreover, the Trustee's claims here clearly are not personal claims of creditors because Defendants' misconduct inhibited Sentinel from meeting its liabilities to <u>all</u> creditors.  *See Fisher*, 155 F.3d at 879 ("[T]rustee is also the only party who can sue to represent the interests of the creditors as a class."); *R.D. Kushnir*, 274 B.R. at 773 (trustee may bring suit against auditors to recover investment losses suffered by creditors).

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss or in the alternative to strike should be dismissed.

Dated: June 25, 2008

Respectfully submitted,

FREDERICK J. GREDE, not individually but as Chapter 11 Trustee of Sentinel Management Group, Inc.

By:  /s/ J. Kevin McCall
     One of his attorneys

J. Kevin McCall (ARDC # 03125685)
Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
Jeffrey S. Eberhard (ARDC # 6276471)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL  60611
Phone: (312) 222-9350

---

[12] Defendants also cite *Indemnified Capital Invs., SA v. R.J. O'Brien & Assocs.*, 12 F.3d 1406 (7th Cir. 1993), which is not even a bankruptcy case and therefore has nothing to do with what claims a bankruptcy trustee can or cannot bring.

## CERTIFICATE OF SERVICE

I, Jeffrey S. Eberhard, an attorney, certify that on June 25, 2008 I caused a copy of the foregoing **Response in Opposition to Defendants' Motion to Dismiss and Strike** to be served by ECF to:

> Richard J. Mason
> Patricia K. Smoots
> Michael E. Schmahl
> McGuire Woods, LLP
> 77 W. Wacker Drive, Suite 4400
> Chicago, Illinois 60601

and by facsimile to:

> Steven M. Farina
> Thomas H.L. Selby
> Williams & Connolly LLP
> 725 12th Street, N.W.
> Washington, D.C. 20005
> Facsimile:  202-434-5029

> s/Jeffrey S. Eberhard